ARTHUR W. FRED, as Administrator with the Will Annexed of the Estate of Ruth Fred, Deceased, Plaintiff-Appellee, *v.* PACIFIC INDEMNITY COMPANY, Defendant-Appellant

No. 5088

March 10, 1972

RICHARDSON, C.J., MARUMOTO, ABE,
LEVINSON AND KOBAYASHI, JJ.

This appeal is being pursued by appellant, Pacific Indemnity Company, from the decision of the trial court granting summary judgment in favor of appellee, Estate of Fred. The action arose in contract against appellant insurance company on a policy of marine insurance it had issued. The trial court found against appellant on grounds of estoppel.

In March, 1969, appellee held a pending California judgment against Harold Conway for wrongfully obtaining certain funds from appellee estate, of which he is now a beneficiary. All the pertinent facts herein occurred during this same month. At that time Conway was the owner of the yacht "Maiawa" which was then harbored at the Ala Wai Yacht Harbor, Honolulu, Hawaii. Appellee initiated attachment proceedings in Honolulu against Conway and had the Maiawa attached by the sheriff. Conway had in effect at that time a marine insurance policy, issued by appellant, insuring the Maiawa against certain "perils of the seas", including among others "theft of the entire vessel".

Conway desired to live on board the Maiawa during its period of attachment. He learned through appellee's attorney that he could do so if the Maiawa were immobilized and appellee were named as loss-payee on the Maiawa's insurance policy. It is presently disputed as to who actually directed appellant to substitute appellee as the loss-payee but the posture of the facts before the trial court at the time of the granting of summary judgment uncontestably indicated that Conway's Honolulu attorney was the one who contacted appellant. The affidavit of Conway's attorney was the only evidence on this issue before the trial court at this time. In essence he averred that he had contacted appellant in California, informing it that Conway's yacht, the Maiawa, had been attached and that in order for Conway to be allowed to reside on board, appellee would have to be made the loss-payee on the insurance policy issued by appellant covering the Maiawa.

Shortly thereafter appellant's agent in California sent a

telegram to appellee's Honolulu attorney naming appellee as the "loss payable" on Conway's insurance policy. Upon receipt of the telegram the Maiawa was physically secured and Conway was permitted aboard. A few days later, Conway sailed the Maiawa away from her mooring to the South Pacific. Appellee duly notified appellant of the alleged theft and appellant denied the claim, appellee initiating suit as loss-payee under the policy.

In the proceedings below, appellant moved for summary judgment, arguing that Conway's taking of his own yacht was not an insurable theft under the terms of the policy. Appellant's position was based solely on the affidavit of Conway, taken in New Zealand, which indicated that it was he who sailed the Maiawa out of Honolulu. Appellee also moved for summary judgment based on its claim as loss-payee on the policy. Appellee's claim was supported by numerous affidavits, including that of Conway's attorney, which indicated that he had requested the loss-payee change in the policy and informed appellant of the attachment. The trial court found for appellee, holding appellant liable on the insurance policy under the doctrine of estoppel.

Subsequently appellant made a timely motion for reconsideration. Attached to this motion were affidavits of Conway, appellant's agent who had sent the telegram from California and an additional affidavit from Conway's Honolulu attorney. Conway and appellant's California agent averred that it was Conway who had contacted appellant's California agent as to the loss-payee substitution and that nothing about the attachment was ever mentioned. The second affidavit of Conway's Honolulu attorney indicated that there was doubt in his mind as to whether he had personally contacted appellant. The motion for reconsideration was denied and judgment was entered in favor of appellee.

### ISSUES

The preliminary issue we are confronted with on this appeal is whether the trial court was correct in invoking the doctrine of estoppel in its granting of summary judgment

against appellant. Our decision of the above issue directs that we delve further and determine whether in this case a loss which was insured for has occurred.

The answer to this question hinges on whether, given the terms of the policy before us, a substituted loss-payee can collect for a "theft of the entire vessel" when as in this case it is the legal owner who has absconded with his yacht.

## ESTOPPEL

The trial court in granting summary judgment determined the principle issue to be "whether Pacific Indemnity in citing the loss payable clause is estopped now to present this defense that the plaintiff can stand in no better shoe than the insured. The question is whether Pacific Indemnity is estopped or not." Apparently the trial court in deciding this issue reasoned that, given appellant's knowledge of the Maiawa's attachment and Conway's desire to live aboard the yacht, in sending the telegram naming appellee as loss-payee under Conway's policy, appellant insurer was estopped from asserting that appellee's rights under the insurance policy were derivative of and no greater than those of Conway himself, the named assured.

Appellant urges that because the second affidavit of Conway's attorney is inconsistent with his first affidavit upon which the trial court relied, this presents definite issues of fact, their existence being inconsistent with a granting of summary judgment. We do not agree. Even if everything Conway's attorney alleged in his first affidavit concerning the contacting of appellant's California agent as to the change in loss-payee were true, under those facts, the doctrine of estoppel would not properly be applicable.

It is not clear from the words of the trial court whether promissory estoppel or estoppel *in pais* (estoppel by conduct) was intended to be evoked. This court has in the past recognized the inclusion of both such doctrines within the more comprehensive doctrine of equitable estoppel:

Equity has long afforded relief to one who has incurred substantial detriment on the faith of another's promise.

The leading case upon such proposition as an equitable defense is that of *Fried v. Fisher, et al., supra,* which holds that a promissory estoppel may arise as an application of the general principle of equitable estoppel to certain situations where a promise has been made, even without consideration, if it was intended that the promise be relied upon and was in fact relied upon, and a refusal to enforce it would be virtually to sanction the perpetration of fraud or result in other injustice.

*Motonaga v. Ishimaru,* 38 Haw. 158, 163 (1948).

To constitute estoppel *in pais* the party against whom it is sought to be enforced must have made some representation the effect of which would be to influence the conduct of the one seeking to enforce the estoppel and induce him to change his position so as to materially injure him if the party making the representation is allowed to deny its truth.

*Silverhorn v. Pacific Mutual Life Ins. Co.,* 24 Haw. 366, 372 (1918).

Let us assume as fact what Conway's attorney alleged in his first affidavit—that it was he who had contacted appellant's agent in California, and he had explained that Conway desired to live on the Maiawa, that it had been attached and that the only way he could do so was if appellee were made loss-payee on Conway's policy. Appellant was not apprised of the possibility that Conway would be absconding with his own yacht, and the fact that Conway wanted to live on board is not sufficient to constitute constructive notice. As to what constitutes a representation, this court has held that "[a] representation may consist of acts and conduct as well as of words, but in any case, in the absence of a fraudulent intent, the act, conduct or words must have been so clear, definite and unambiguous as to cause one, as a reasonable person, to form a belief of an existing fact." *Carty v. Jarrett,* 21 Haw. 274, 278 (1912). There are many reasons why anyone with an interest such as appellee had in the Maiawa would want to have insurance protection. The Maiawa could have been scuttled at the pier, stolen

by a third party, or destroyed by a fire. If in fact appellant did not insure the Maiawa against a theft by its owner, appellant cannot now be charged with having insured against such a loss merely because it complied with the owner's request for a loss-payee change.

The telegram sent by appellant to appellee's Honolulu attorney stated merely that the loss-payee designation had been changed to include appellee under Conway's insurance policy. Whether we characterize that communique as a promise or a representation, as those terms are used in the authority cited above, it is not sufficient under the facts of this case to create an estoppel as determined by the trial court. Thus appellant is not barred from asserting its defense that what occurred was not an event that was insured against.

### POLICY COVERAGE

Generally, in a summary judgment proceeding if a party moves for summary judgment with supporting affidavit and if said supporting affidavit refers to specific papers or parts thereof said copies of papers or parts thereof must be sworn to or certified and be attached to the affidavit. H.R.C.P. Rule 56(e); *Cane City Builders v. City Bank*, 50 Haw. 472, 474, 443 P.2d 145, 147 (1968). However, if no such supporting affidavits are filed, as in this case, the trial court can render summary judgment on the pleadings. H.R.C.P. Rule 56(a) and 56(b); *Richards v. Midkiff*, 48 Haw. 32, 39, 396 P.2d 49, 55 (1964). In this case the complaint filed by appellee through its attached exhibit B clearly brought into issue the insurance policy in question. At no time did appellant challenge the validity of exhibit B. In fact appellant through its motion for summary judgment and memorandum admitted that "there is no genuine issue as to any material fact and this defendant is entitled to judgment as a matter of law".

It is axiomatic that, just as the owner of a building cannot ordinarily recover under his insurance policy for a loss due to fire which he himself intentionally started, Conway cannot recover for his own absconding of his own boat. The question in this case, therefore, is whether a designated loss-payee

can recover in just such a situation, where the owner could not. Does appellee have greater rights than Conway were Conway himself the named payee under the policy? This question can be resolved by determining whether what we are confronted with is an open loss payable or a union or standard mortgagee clause.

In APPLEMAN, INSURANCE LAW AND PRACTICE, § 3401, at 282 (1970), the difference between the types of loss payable clauses is stated as follows:

There are several different types of common loss payable or mortgage clauses. The open loss payable clause simply states that 'loss, if any, is payable to B. as his interest shall appear', or uses other equivalent words, merely identifying the person who may collect the proceeds. However, there is another type variously known as the New York, standard, or union form which contains a somewhat similar expression and then goes on to state that 'this insurance, as to the interest of the mortgagee only, shall not be invalidated by any act or neglect of the mortgagor or the owner of the within described property . . . .'

Under an open loss payable clause the mortgagee is merely an appointee and such a clause "does not specifically protect him [payee] against the acts and omissions of the mortgagor, the effect is to place the mortgagee's indemnity at the risk of any act and omission of the mortgagor that would void, terminate, or affect the insurance of the latter's interest under the policy, and the mortgagee cannot recover if the mortgagor cannot." 11 COUCH, INSURANCE 2D, § 42:671, at 335-36 (1963). The standard or union mortgage clause on the other hand "will specify in some form of language that the insurance with respect to the mortgagee shall not be invalidated by the mortgagor's acts or neglect." COUCH, supra, § 42:685, at 344.

It is evident from the above authorities that in order to create a standard or union mortgagee clause, it is necessary that the insurance policy, or an endorsement thereto, provide that the loss payable mortgagee's interest is not subject to

wrongful or unlawful acts of the insured which would invalidate coverage. The case law in this area is in accord. *See Southwestern Funding Corp. v. Motors Insurance Corp.*, 59 Cal. 2d 91, 378 P.2d 361, 28 Cal. Rptr. 161 (1963); *Reserve Ins. Co. v. Aguilera,* 181 Neb. 605, 608, 050 N.W.2d 114, 117 (1967).

In the case before us, the policy itself indicated merely who the prior loss-payee was and the subsequently attached endorsement indicated that appellee had been substituted as the loss-payee. Nothing was included at to the loss-payee's interest not being subject to acts of the owner which would invalidate coverage. Given the absence of such language in the policy, it is evident that an open loss payable clause was in effect at the time that appellee suffered its loss. Accordingly, appellee steps into the shoes of Conway and its claim is defeated by the fact that Conway himself perpetrated the loss. This result is in accord with the terms of the policy itself. "It is expressly understood and agreed if and when an Assured under this policy has any interest other than as an owner of the vessel named herein, in no event shall the Company be liable hereunder to any greater extent than if such Assured were the owner and were entitled to all the rights of limitation to which a shipowner is entitled."

It was therefore error to grant summary judgment in favor of appellee since as a matter of law appellant's actions did not create an estoppel. In accordance with our construction of the loss payable clause, appellee stood in no better position than Conway. As such summary judgment properly lies with appellant.

Remanded for entry of judgment accordingly.

*George W. Ashford, Jr. (Jenks, Kidwell, Goodsill & Anderson* of counsel) for defendant-appellant.

*David C. Schutter* for plaintiff-appellee.


### DISSENTING OPINION OF MARUMOTO, J.

I dissent. I would reverse and remand to the circuit court, but not to have a judgment entered in favor of appel-

lant. Remand would be for further proceedings.

The circuit court granted appellee's motion for summary judgment, and denied a like motion for appellant, upon the posture of the case at the time the motions were heard. In my opinion, the posture of the case at that time was such that neither appellant nor appellee was entitled to summary judgment.

For appellant to be entitled to summary judgment, the pleadings and other papers, which may properly be considered on its motion, must clearly show that appellee was a mere loss-payee under an open loss-payable clause and that there was no genuine issue of material fact on that question.

In directing the entry of summary judgment for appellant, this court states in its opinion:

"In the case before us, the policy itself indicated merely who the prior loss-payee was and the subsequently attached endorsement indicated that appellee had been substituted as the loss-payee."

The sole support of the above statement is Exhibit G attached to appellee's motion for summary judgment.

Exhibit G consists of 6 sheets of xerox copies of carbon copies of documents which appear to have originated in appellant's office. The first sheet is entitled "Yacht Daily Report—Producer's Copy", reproduces the first page of the yacht policy used by appellant, and contains the entry: "Loss payable in U.S. currency to Assured and United California Bank, Encino, California." The sixth sheet is entitled "Endorsement No. 3", and has the following entry: "2. The following is added as Loss Payee: ARTHUR FRED, as Special Administrator of the Will Annexed of the Estate of RUTH FRED, Deceased."

Under H.R.C.P., Rule 56(c), summary judgment is rendered upon "pleadings, depositions and admissions on file, together with the affidavits, if any".

In this case, the only pleadings which may be considered on the motions for summary judgment is appellee's complaint.

Exhibit G is not a part of the complaint. Nor is it a part of the affidavits on file, for it is not mentioned in any affidavit. It bears no signature, and there is no certificate as to authenticity on any of the sheets or on a separate paper. It is mentioned only in the appellee's memorandum of points and authorities in support of his motion for summary judgment and in opposition to appellant's motion for summary judgment.

Under those facts, I do not think that Exhibit G may be considered on either of the motions for summary judgment. H.R.C.P. Rule 56(c); *Cane City Builders v. City Bank*, 50 Haw. 472, 443 P.2d 145 (1968).

The complaint indicates that appellee might have been an additional assured, instead of being simply a loss-payee, in which case the wrongdoing of Conway would not have given a defense to appellant. *Neal, Clark & Neal Co. v. Liverpool & London & Globe Ins. Co.*, 178 App. Div. 730, 165 N.Y.S. 204 (1917).

It alleged that, in consideration of the premium it received from Conway, appellant was obligated to issue its policy insuring Conway as the assured and any duly designated loss-payee "as an additional assured". It further alleged that the loss-payee shown on the policy issued to Conway was United California Bank.

It also had attached thereto, as Exhibit C, a telegram from appellant's agent to appellee's attorney, which read: "ARTHUR FRED AS SPECIAL ADMINISTRATOR WILL ANEXED OF THE ESTATE OF RUTH FRED NAMED LOSS PAYABLE ON PACIFIC INDEMNITY INSURANCE FOR HAROLD CONWAY GULF FORTY EFFECTIVE MARCH 22, 1969".

The allegations mentioned above raise, but do not answer, the question whether United California Bank was merely a loss-payee or whether it was an additional assured, besides being a loss-payee.

The telegram is not a paragon of clarity. Considered alone, it may indicate that appellee was named as a loss-payee under an open loss-payable clause. But considered

together with the allegations of the complaint, it raises the question whether appellee was named as loss-payee in the place of United California Bank. If appellee was named as loss-payee in the place of United California Bank, and if United California Bank was an additional assured, there was the possibility that appellee would also be an additional assured, besides being a loss-payee.

The record does not contain definite answers to the questions posed above. In the circumstance, it cannot be said that there was no genuine issue as to any material fact and that appellant was entitled to judgment as a matter of law.

With reference to appellee's motion for summary judgment, I think that the circuit court erred in granting the motion on the ground of estoppel.

In the complaint, appellee alleged that the terms and conditions of the policy were not known or disclosed to him until June 2, 1969, more than two months after the yacht was stolen. I cannot see any estoppel by the loss-payable designation in the telegram when appellee did not know the terms and conditons of the policy.

As I see this case, appellee may recover only if he can prove by relevant evidence either that he was an additional assured under the policy or that his designation as loss-payee was as a loss-payee to whom the law with respect to standard mortgage clause was applicable. The record does not conclusively establish that he was a loss-payee who had a right of recovery independent of, and not through, the named assured. So, here also, it cannot be said that there was no genuine issue of material fact and that appellee was entitled to judgment as a matter of law.