891 P.2d 261

AIG HAWAI'I INSURANCE COMPANY, INC., a Hawai'i corporation, Plaintiff–Appellee,

v.

Christopher T.F.K. SMITH, Sr., Individually and as Special Administrator of the Estate of Christopher T.F.K. Smith, Jr., Mary A.L. Smith, and Cyd L. Smith, Individually and as Guardian Ad Litem for Keikilaniilipanio K. Smith, Iokua K. Smith, and Tiare A. Smith, minors, Defendants–Counterclaim Plaintiffs–Appellants,

and

Eric Castillo, Defendant–Appellant,

v.

LIBERTY MUTUAL INSURANCE COMPANY, Frederick D. Lawrence, Jr., Minor, Frederick D. Lawrence, Sr., Individually and as Guardian Ad Litem for Frederick D. Lawrence, Jr., and Caroline Lawrence, Counterclaim Defendants–Appellees.

No. 15297.

Supreme Court of Hawai'i.

Feb. 28, 1995.

As Amended March 3, 1995.

Reconsideration Denied April 11, 1995.

As Amended May 19, 1995.

James J. Bickerton and William W. Saunders of Bickerton, Saunders, Dang & Bouslog, on the briefs, Honolulu, for Smith appellants.

Charles W. Crumpton of Hall & Crumpton, on the briefs, Honolulu, for defendant-appellant Eric Castillo.

Grant K. Kidani, Paul K. Hoshino and Byron K.H. Hu of Kidani–Crudele, on the briefs, Honolulu, for plaintiff-appellee AIG Hawai'i Ins. Co.

MOON, C.J., LEVINSON and NAKAYAMA, JJ., and SHIMABUKURO Circuit Judge, in place of KLEIN, J., Recused, and KOCHI Circuit Judge, in place of RAMIL, J., Recused.

MOON, Chief Justice.

Defendant-appellant Eric Castillo and defendants-counterclaim plaintiffs-appellants Christopher T.F.K. Smith, Sr., individually and as Special Administrator of the Estate of Christopher T.F.K. Smith, Jr., Mary A.L. Smith, and Cyd L. Smith, individually and as Guardian Ad Litem for Keikilaniilipanio K. Smith, Iokua K. Smith, and Tiare A. Smith, minors (the Smith appellants), appeal the trial court's order granting summary judgment in favor of plaintiff-appellee AIG Hawai'i Insurance Company, Inc. (AIG). In this action, AIG sought declaratory relief regarding its rights and duties under an insurance policy issued to Castillo as well as under separate but identical insurance policies issued to Castillo's father and brother. AIG moved for summary judgment asserting that, under the circumstances of the accident in question, it had no obligation to provide liability coverage to Castillo in connection with the wrongful death action filed by the Smith appellants on behalf of Christopher T.F.K. Smith, Jr. (Smith), who was killed in the accident. The trial court agreed and granted summary judgment in favor of AIG.

On appeal, Castillo and the Smith appellants (collectively, appellants) assert that: (1) a genuine issue of material fact exists con-

cerning whether AIG is estopped from denying coverage; and (2) appellants are entitled to coverage under Castillo's father's and brother's AIG policies based upon Castillo's standing as a family member of the same household. Additionally, the Smith appellants contend that AIG is obligated to provide coverage because it failed to timely answer two requests for admissions.

Based on our review of the record, we conclude that, at the time AIG undertook Castillo's defense, it knew or should have known that grounds for noncoverage existed. However, without securing a reservation of rights, AIG assumed control over Castillo's defense, to his detriment. We therefore hold that, because of the prejudice to Castillo resulting from AIG's unconditional assumption of his defense, AIG is estopped from denying coverage to Castillo under his own policy. We also hold that Castillo qualifies as a "covered person" under his father's and brother's separate policies and is not subject to any applicable exclusions. Consequently, we need not address the Smith appellants' contention regarding AIG's obligation to provide coverage for failure to timely answer the requests for admissions.

Accordingly, we reverse the trial court's order granting summary judgment in favor of AIG and remand this case for entry of summary judgment in favor of appellants.

## I. FACTS [1]

On the morning of June 6, 1988, counterclaim defendant-appellee Frederick Lawrence, along with several Waialua High School students, attended a barbecue at Kaiaka Beach Park. Although the record is unclear, one or more students, not including Castillo, had arranged for someone to purchase them one or two cases of beer. The beer was placed into a cooler in the trunk of Castillo's automobile and transported to the beach park at approximately 11:00 a.m. At the barbecue, Lawrence consumed approximately six beers during a two- to three-hour period.

At approximately 2:00 p.m., Castillo left the barbecue and drove to the Matsumoto Shave Ice store. Some time later, Lawrence, Roger Menor, and Orlando Bitanga left the beach park and went to Menor's residence. Lawrence, an unlicensed minor and allegedly intoxicated, then took Bitanga's vehicle without permission. While being pursued by the police, Lawrence struck and killed Smith, a pedestrian. Neither Castillo nor his vehicle were in the proximity of the accident.

On August 16, 1988, the Smith appellants filed a wrongful death action against numerous defendants, including Castillo. The Smith appellants' alleged liability against Castillo arising out of the use of his car to transport the beer that Lawrence consumed at the beach park on the day of the accident.

At the time of the accident, Castillo had a valid automobile insurance policy with AIG providing for the payment of "compensatory damages for bodily injury or property damage for which any covered person [2] becomes legally responsible because of an auto accident." After Castillo was served with the wrongful death lawsuit, AIG retained counsel to defend Castillo. On January 11, 1989, AIG sent Castillo a letter disclaiming coverage for punitive damages and compensatory damages in excess of the policy limits. On January 26, 1989, Castillo's deposition was taken. Thereafter, on February 24, 1989, AIG sent Castillo another letter denying him coverage on the basis that he was not a "covered person" under his automobile insurance policy because the insured vehicle was not involved in the accident. In March 1989, AIG terminated its defense of Castillo.[3]

Castillo lived in the same household with his father, Apolonio Castillo, and his brother, Mario Castillo. Each owned his own vehicle and had separate but identical automobile insurance policies with AIG. In October

---

1. We have recently described the underlying facts in *First Insurance Co. of Hawai'i, Ltd. v. Lawrence*, 77 Hawai'i 2, 881 P.2d 489 (1994).

2. Under the policy, "covered person" means "you or any **family member** for the ownership, maintenance, or use of any auto...." (Emphasis in original.)

3. First Insurance Company subsequently provided a defense and coverage for the claims against Castillo under a homeowner's policy.

1989, the Smith appellants made a demand for coverage under the policies of Castillo's father and brother.

On November 9, 1989, AIG filed this declaratory judgment action, asserting that Castillo did not qualify as a covered person under his policy because he did not operate, maintain or use his vehicle in the immediate proximity of Lawrence's accident. AIG further asserted that the policies issued to Castillo's father and brother likewise did not provide coverage because of a policy exclusion precluding liability coverage on any vehicle, "other than [the] covered auto," which was "owned by or furnished or available for the regular use of any family member."

AIG, by way of a motion for summary judgment, sought a declaration from the court that it had no obligation to provide liability coverage to Castillo under any of the policies at issue in this case. The Smith appellants filed a cross motion for summary judgment contending that AIG was obligated to provide liability coverage to Castillo. Following a consolidated hearing on both motions, the trial court granted summary judgment in favor of AIG on all claims. Appellants timely appealed.

## II. *STANDARD OF REVIEW*

■ An order of summary judgment is reviewed under the same standard applied by the trial courts and is appropriate where the moving party demonstrates that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. *Dawes v. First Ins. Co. of Hawai'i, Ltd.,* 77 Hawai'i 117, 121, 883 P.2d 38, 42, *reconsideration denied,* 77 Hawai'i 489, 889 P.2d 66 (1994); *see also Sol v. AIG Hawai'i Ins. Co.,* 76 Hawai'i 304, 306, 875 P.2d 921, 923, *reconsideration denied,* 76 Hawai'i 353, 877 P.2d 890 (1994). The evidence is viewed in the light most favorable to the non-moving party. *State Farm Mut. Auto. Ins. Co. v. Fermahin,* 73 Haw. 552, 555, 836 P.2d 1074, 1076 (1992). For purposes of summary judgment, "a fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Methven–Abreu v. Hawaiian Ins. & Guar. Co.,* 73

Haw. 385, 398, 834 P.2d 279, 286, *reconsideration denied,* 73 Haw. 625, 838 P.2d 860 (1992).

## III. *DISCUSSION*

### A. *Estoppel*

■ Appellants primarily argue that, by failing to reserve its rights and by retaining counsel for Castillo, AIG is now estopped from denying coverage under Castillo's policy. Generally, once the insurer undertakes to represent the insured in an action, the insured has the right to expect continued representation "until some notice is given of its withdrawal or of a change in the capacity in which it is acting in the matter." 14 *Couch on Insurance 2d* § 51:103 (1982) [hereinafter, Couch].

> [I]f a liability insurer, with knowledge of a ground of forfeiture or noncoverage under the policy, assumes and conducts the defense of an action brought against the insured, without disclaiming liability and giving notice of its reservation of rights, it is thereafter precluded in an action upon the policy from setting up such ground of forfeiture or noncoverage. In other words, the insurer's unconditional defense of an action brought against its insured constitutes waiver of the terms of the policy and an estoppel of the insurer to assert such grounds.

44 Am.Jur.2d *Insurance* § 1423 (1982) (footnotes omitted). An insurance company, however, may initially assume the unconditional defense of an insured while it performs its own reasonable investigation to determine whether coverage exists. *See Upper Columbia River Towing v. Maryland Casualty Co.,* 313 F.2d 702, 706–07 (9th Cir.1963); 7C Appleman, *Insurance Law and Practice* § 4693 (1979). Once the insurer receives information concerning the possible absence of coverage, the insurer must promptly serve upon the insured a reservation of rights. Appleman, *supra,* § 4693. If the insurer discovers that a basis for noncoverage exists, the law is clear that

> [i]n order to avoid the conclusion that the insured has been prejudiced by its withdrawal, the insurer must act promptly ·

upon learning of the basis for withdrawing and must give prompt notice to the insured of its intention so to do, in order that the latter may undertake his own defense. Accordingly, if an insurer under a liability policy wishes to withdraw from any suit instituted against the insured, or refuses to take further steps in defense thereof, it must inform the insured promptly of its intentions and permit him to make defense in his own behalf.

Couch, *supra*, § 51:103 (footnote omitted). Based on our review of the record, we conclude that AIG's withdrawal was not promptly undertaken after it knew or should have known that a basis for noncoverage existed.

The basic facts are undisputed. The Smith appellants filed their complaint on August 16, 1988. The complaint clearly indicates that the Smith appellants asserted liability against Castillo based upon his involvement in facilitating the availability of beer at the beach park on the day of the accident, which resulted in Lawrence becoming intoxicated, and that such conduct caused or contributed to the accident.[4] It is also clear from the complaint that Castillo's vehicle was not involved in the accident because Lawrence was operating Bitanga's vehicle.

We have long recognized that

[an insurer's] obligation to defend ... is broader than the duty to pay claims and arises whenever there is the mere *potential* for coverage. *Commerce [ & Indus. Ins. Co. v. Bank of Hawaii ]*, 73 Haw. [322,] at 325, 832 P.2d [733,] at 735[, *reconsideration denied*, 73 Haw. 625, 834 P.2d 1315 (1992) ] (emphasis added) (citations omitted). In other words, the duty to defend " 'rests primarily on the *possibility*

that coverage exists. This possibility may be remote, but if it exists[,] the [insurer] owes the insured a defense.' " *Standard Oil Co. of California v. Hawaiian Ins. & Guar. Co., Ltd.*, 65 Haw. 521, 527, 654 P.2d 1345, 1349 (1982) (quoting *Spruill Motors, Inc. v. Universal Under. Ins. Co.*, 212 Kan. 681, 686, 512 P.2d 403, 407 [ (1973) ] (emphasis added). "All doubts are resolved against the insurer and in favor of the insured[.]" *Trizec Properties, Inc. v. Biltmore Constr. Co.*, 767 F.2d 810, 812 (11th Cir.1985) (citing 7C Appleman, *Insurance Law & Practice*, 99–100 (Berdal ed. 1979)).

*Sentinel Ins. Co. v. First Ins. Co. of Hawaii*, 76 Hawai'i 277, 287, 875 P.2d 894, 904 (1994) (emphasis in original). "The well established general rule is that the allegations in the complaint in the underlying action determine an insurer's duty to defend its insured." *Fidelity & Casualty Co. of New York v. Envirodyne Eng'g*, 122 Ill.App.3d 301, 304, 77 Ill.Dec. 848, 850, 461 N.E.2d 471, 473 (1983). However, despite the clear indication from the complaint that a ground for noncoverage existed, that is, that the insured vehicle was not involved in the accident, AIG selected and assigned an attorney to defend Castillo without executing a reservation or non-waiver of rights with Castillo.

On January 11, 1989, nearly five months after the complaint was filed, AIG forwarded Castillo a letter advising him that AIG disclaimed coverage under the policy for punitive damages and compensatory damages in excess of the policy limit, thereby affirmatively indicating to Castillo that, at least by clear implication, it would defend him and provide coverage for compensatory damages *within* the limits of the policy.

---

4. The complaint alleged in pertinent part:

 7. On or about June 8, 1988, on Waialua Beach Road in the City and County of Honolulu, State of Hawaii, Frederick D. Lawrence, Jr., a minor who was *not licensed to drive*, operated a motor vehicle in a negligent and/or reckless manner and thereby collided with the person of Christopher T.F.K. Smith, Jr., a pedestrian.

 13. Said actions by Frederick D. Lawrence, Jr. were committed at a time when he was intoxicated ... and consequently, plaintiffs are entitled to an award of punitive damages.
 . . . .

 25. On or about June 8, 1988 defendants Eric Costillio [sic], Orlando Bitanga and/or John Does 1–15, acting individually and/or in concert, did purchase, conspire to purchase, solicit the purchase of and/or transport alcoholic beverages which were provided to and/or intended for consumption by, and which were consumed by, Frederick D. Lawrence, Jr., a minor.

 26. Said conduct resulting in the consumption of alcoholic beverages by Frederick D. Lawrence, Jr., a minor, was illegal, negligent and/or reckless and proximately caused or contributed to the aforesaid collision.

Under the terms of AIG's insurance policy with Castillo, AIG agreed to pay

compensatory damages for bodily injury or property damage for which any *covered person* [5] becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. Our duty to settle or defend ends when our limit for this coverage has been exhausted.

(Emphasis in original.) In order for AIG to have formulated a knowledgeable basis for its position, as reflected in its January 11, 1989 letter, it must have reviewed the allegations in the complaint in conjunction with the policy. Thus, as of January 11, 1989, at the very latest, the question of noncoverage was apparent from the face of the complaint, yet AIG failed to secure a reservation of rights or withdraw coverage. We have no doubt that AIG's denial of coverage on February 24, 1989 was not a withdrawal promptly undertaken by AIG immediately after it knew or should have known that a basis for noncoverage existed.

 The dispositive question here, however, is whether the actions of AIG prejudiced Castillo's interest, as a matter of law, thereby estopping AIG from denying coverage. We have stated that the party invoking equitable estoppel must show that "he or she has detrimentally relied on the representation or conduct of the person sought to be estopped, *and* that such reliance was reasonable." *Doherty v. Hartford Ins. Group*, 58 Haw. 570, 573, 574 P.2d 132, 134–35 (1978) (citations omitted) (emphasis in original); *accord Waimea Falls Park, Inc. v. Brown*, 6 Haw.App. 83, 98, 712 P.2d 1136, 1146 (1985); *Strouss v. Simmons*, 66 Haw. 32, 43–44, 657 P.2d 1004, 1012 (1982); *see also Fred v. Pacific Indem. Co.*, 53 Haw. 384, 387–88, 494 P.2d 783, 786 (1972). Such requirement, however, may be dispensed with in order to prevent manifest injustice. *Filipo v. Chang*, 62 Haw. 626, 635, 618 P.2d 295, 300 (1980).

In *Filipo*, Gloria Filipo, individually and as guardian ad litem for her unborn child, filed an action for declaratory and injunctive relief to obtain welfare assistance for her unborn child. The trial court ruled in favor of Filipo, and the State Department of Social Services and Housing (DSSH) appealed. Noting that, for over twenty-three years, a DSSH regulation had been relied upon to grant welfare assistance to pregnant women, we held that the state was estopped from challenging the validity of that regulation because of noncompliance with the Hawai'i Administrative Procedure Act when the state's misfeasance and nonfeasance were responsible for the noncompliance.

In our holding, we also noted that the usual reliance element of equitable estoppel should not serve as a bar to the application of estoppel under the circumstances of Filipo's case. We explained that:

[g]overnment agencies which serve a myriad of clients are reasonably expected and relied upon by those being served to comply with the law in adopting rules and regulations. Failure to do so should not benefit wayward agencies to the detriment of their constituency, and such agencies should not be permitted to seek the imprimatur of the law, resulting in manifest injustice to their clients.

*Id.* at 635, 618 P.2d at 301. We believe that the concerns applicable to the government in *Filipo* are likewise relevant in the insurance context in the present case, that is, that Castillo would suffer manifest injustice if the doctrine of equitable estoppel were not applied.

The inequities present in the record before us are clear. AIG accepted and assumed Castillo's defense by assigning an attorney to the case shortly after the complaint was filed, even though it was plainly evident from the face of the complaint that a ground for noncoverage existed. Rather than obtain a reservation of rights or non-waiver of rights, AIG: (1) chose instead to assume unconditional control over Castillo's defense; (2) reaffirmed its intention to provide coverage for compensatory damages within the policy limits; and (3) allowed Castillo's deposition to be taken, potentially exposing him to criminal liability, without the benefit of independent counsel. Moreover, the information obtained by AIG's retained-counsel during the discov-

5. *See supra* note 2.

ery process, including information learned from Castillo's deposition, was presumably relayed to AIG and served as the basis for AIG's denying coverage and withdrawing Castillo's defense. AIG's actions effectively deprived Castillo of his right to: (1) obtain private counsel; (2) control his defense, *e.g.*, by arranging for an initial independent investigation of the facts; (3) explore possible settlement negotiations; and (4) control the manner of handling the lawsuit. AIG's actions further created an apparent conflict of interest due to the insurance company's attorney performing a dual role, that is, maintaining exclusive control of the defense of the claims against the insured while gathering information that could simultaneously be used by the insurer to deny coverage. Failure to apply the doctrine of equitable estoppel in the present situation would result in manifest injustice to Castillo. We therefore hold that AIG is estopped from denying coverage under Castillo's policy.[6]

## B. *Separate Family Policies*

We now address the question whether appellants are entitled to coverage under the separate policies of Castillo's father and brother (the family policies). Appellants argue that Castillo is entitled to coverage under the family policies because he qualifies as a "covered person" under both policies pursuant to either paragraph "1." [hereinafter, clause one] or paragraph "4." [hereinafter, clause four] of the definition of "covered person" contained in the policies, which provide in pertinent part:

"Covered person" as used in this Part means:

1. You or any **family member** for the ownership, maintenance or use of any auto or **trailer.**

. . . .

4. For any auto or **trailer,** other than **your covered auto,** any person or organization but only with respect to legal responsibility for acts or omissions of you or any **family member** for whom coverage is afforded under this Part. This provision applies only if the

person or organization does not own or hire the auto or **trailer.**

(Bold in original.)

AIG argues that regardless of whether Castillo qualifies as a "covered person" under the policies' definition, Castillo is precluded from coverage by virtue of the policies' "resident relative" exclusion, which provides in pertinent part:

We do not provide Liability Coverage:

. . . .

10. For the ownership, maintenance or use of any vehicle, other than **your covered auto,** which is owned by or furnished or available for the regular use of any **family member.** However, this exclusion does not apply to you.

(Bold in original.)

On the other hand, the Smith appellants contend that the exclusion is inapplicable "because Castillo's liability does not arise out of the ownership, maintenance or use of his *own* vehicle or one furnished for his use; it arises out of Frederick Lawrence, Jr.'s use of the accident vehicle." (Emphasis in original.) Moreover, Castillo contends that the resident relative exclusion is void as being against public policy. We address this argument first.

### 1. The "Resident Relative" Exclusion Is Valid

█ Castillo argues that the "resident relative" exclusion is void as being against public policy because the "resident relative" exclusion is invalid and unenforceable pursuant to *State Farm Mutual Automobile Insurance Co. v. Wolfe,* 638 F.Supp. 1247 (D. Hawai'i 1986), and *Kim v. State Farm Mutual Automobile Insurance Co.,* 736 F.Supp. 218 (D. Hawai'i 1990). Castillo asserts that, because the United States District Court of Hawai'i has already ruled that "resident relative" exclusions are invalid and unenforceable as a matter of public policy, we should likewise find the exclusion void for the same reasons. Castillo's argument here fails for

---

6. We emphasize, however, that AIG's obligation to pay is contingent on Castillo being found legally responsible for any or all of the Smith appellants' damages in the underlying tort suit.

two reasons. First, *Kim* was reversed by the Ninth Circuit Court of Appeals in *Kim v. State Farm Mutual Automobile Insurance Co.*, 952 F.2d 314 (9th Cir.1991); and, second, both *Wolfe* and *Kim* were decided without the benefit of our decision in *Kang v. State Farm Mutual Automobile Insurance Co.*, 72 Haw. 251, 815 P.2d 1020 (1991), wherein we held that the "resident relative" exclusion was consistent with the public policy objective of providing insurance at the least possible cost. *Id.* at 261, 815 P.2d at 1025.

### 2. Clause One

The Smith appellants next argue that Castillo qualifies as a "covered person" under clause one of the family policies. To qualify as a "covered person" under clause one, two elements must be satisfied: (1) the person seeking "covered person" status must be a "family member"; [7] and (2) the person's conduct implicating coverage for the automobile-related accident must stem from *the person's* "ownership, maintenance or use" of any automobile.

It is clear that, because Castillo is both related by blood to his father and brother and lives in the same household, Castillo qualifies as a "family member." Further, inasmuch as the clause requires that Castillo's liability must stem from *Castillo's* "ownership, maintenance or use" of a vehicle, under the facts as presented, the only conceivable "ownership, maintenance or use" of an automobile that could be directly attributable to Castillo is Castillo's use of his own vehicle. Under the allegations of the complaint, the theory of legal responsibility asserted against Castillo could be construed as stemming from Castillo's use of his vehicle in transporting the alcohol that Lawrence consumed to the park. So interpreted, Castillo qualifies as a "covered person" under clause one of the family policies.

However, under this interpretation, the resident relative exclusion would serve to exclude coverage for Castillo. To reiterate, the "resident relative" exclusion provides:

We do not provide Liability Coverage:

. . . .

10. For the ownership, maintenance or use of any vehicle, other than **your covered auto,** which is owned by or furnished or available for the regular use of any **family member.** However, this exclusion does not apply to you.

(Bold in original.)

By its plain language, the exclusion applies if the alleged legal responsibility of the "family member" stems from the family member's "ownership, maintenance or use" of a vehicle "owned by or furnished or available for the regular use of" the family member. Because Castillo is a "family member," a relative to both his father and his brother, and, as noted above, Castillo's claim to entitlement to "covered person" status pursuant to clause one necessarily implies that Castillo's alleged legal responsibility stems from the use of his own vehicle, the "resident relative" exclusion applies and serves to exclude coverage to Castillo.

### 3. Clause Four

#### a. *AIG's Interpretation*

Relying on *Scott v. American Standard Insurance Co. of Wisconsin,* 132 Wis.2d 304, 392 N.W.2d 461 (App.1986), and *Auto–Owners Insurance Co. v. Jones,* 397 So.2d 317 (Fla.App.1981), AIG argues that other jurisdictions have construed language identical or similar to clause four as being limited to situations involving vicarious liability. In *Scott,* Scott was injured while riding as a passenger in a vehicle driven by Waters. At the time of the accident, Waters was a minor in the custody of his father. Waters's mother, however, signed as Waters's sponsor in order to allow Waters to obtain a driver's license. Scott contended that his injuries were covered by Waters's stepfather's policy, which included the clause four-language in its definition of "covered person." In applying the facts, the *Scott* court held that Waters was covered under his stepfather's policy

---

7. "Family member" is defined under the family policies as "a person related to you [the named insured] by blood, marriage or adoption who is a resident of your household, including a ward or foster child."

because: (1) Waters qualified as "any person"; (2) the auto driven by Waters qualified as "any auto"; (3) as the named insured's wife, who resided in the named insured's household, Waters's mother was a "family member"; and (4) by signing as Waters's sponsor, Waters's mother was "legally responsible" for Waters's use of "any auto."

Similarly, in *Jones,* Auto–Owners insured a vehicle owned by Clarence Jones. The insured vehicle, driven by Jones, was involved in a collision with a vehicle driven by Darrell Halling. Halling filed suit against Jones. Auto–Owners paid its policy limits to the Hallings and obtained a general release in favor of itself and Jones. Two years later, Halling filed suit against Jones and his wife, asserting that Mrs. Jones, who was a passenger in the insured vehicle at the time of the accident, negligently failed to prevent her allegedly intoxicated husband from driving the vehicle. Auto–Owners refused to defend Mrs. Jones, and the Joneses retained other counsel who brought a declaratory judgment action.

The policy in issue provided in pertinent part:

"INSURED" shall mean:

(1) ... the named insured and any person using the automobile and any person or .organization legally responsible for its use, provided the actual use thereof is with the permission of the named insured....

*Jones,* 397 So.2d at 319. Noting that the sole allegation against Mrs. Jones was that she negligently failed to prevent her husband from operating the automobile, even though she was well aware that he was incapable of safely operating the vehicle, the *Jones* court held that Mrs. Jones was not a covered person under the policy because the allegation failed to "fall within the definition of 'any person or organization legally responsible for its (the automobile['s]) use.' " *Id.* at 320.

Upon careful review, neither *Scott* nor *Jones* reasonably may be said to stand for the proposition that clause four is limited to situations involving vicarious liability. To the contrary, the *Scott* court noted that

while subsection (4) does provide coverage for "any person or organization" with re-

spect to legal responsibility for acts of a "covered person," there is no indication that it is to serve as a limitation or restriction of the language in sub. (1). *Rather, it is an expansive provision; it adds to the coverage.*

*Scott,* 392 N.W.2d at 463 n. 4 (emphasis added). We therefore disagree with AIG's position.

### b. *The Smith Appellants' Interpretation*

■ The Smith appellants, on the other hand, assert that the trial court erred in holding that Castillo does not qualify as a "covered person" under clause four of the family policies' definition of "covered person" and argue that the clause can be construed as affording coverage for: "any auto, for [ERIC CASTILLO] but only with respect to legal responsibility for [the] acts or omissions of [ERIC CASTILLO] for whom coverage is provided under this part." This construction is flawed for two principal reasons: first, under the Smith appellants' construction, the terms "any person" and "family member" both refer to Castillo, and thus Castillo's alleged liability necessarily stems from his own actions, or more specifically, for the ownership, maintenance or use of his own vehicle. Therefore, for the same reasons stated above in the discussion dealing with clause one, the "resident relative" exclusion would serve to exclude coverage for Castillo.

Second, the Smith appellants' construction of clause four runs counter to the selective use of those terms in defining the scope of coverage in the policy. For example, in *Economy Fire & Casualty Co. v. Kubik,* 142 Ill.App.3d 906, 97 Ill.Dec. 68, 492 N.E.2d 504 (1986), the Illinois appellate court examined a policy which, in defining "covered person," utilized exactly the same language as in the policy at issue in this case. Analyzing the selective use of the terms "family member" and "any person," the *Kubik* court stated:

[W]hile the terms "family member" and "any person" have a clear meaning when standing alone, that meaning can become, as in the instant case, ambiguous through the manner in which those terms are used throughout the policy. In this regard, we note that the terms "family member" and

"any person" are used selectively throughout the policy's exclusion in such a way as to create the impression that they refer to *mutually exclusive* classes.

*Id.* at 910, 97 Ill.Dec. at 71, 492 N.E.2d at 507 (emphasis added); *see also American States Ins. Co. v. Adair Indus.,* 576 N.E.2d 1272 (Ind.App.1991) (same); *Hartford Ins. Co. of Illinois v. Jackson,* 206 Ill.App.3d 465, 151 Ill.Dec. 451, 564 N.E.2d 906 (1990) (same), *appeal denied,* 139 Ill.2d 595, 159 Ill.Dec. 107, 575 N.E.2d 914 (1991).

We agree with the court in *Kubik* and likewise conclude that the selective use of the terms "any person" and "family member" in clause four of AIG's policy creates mutually exclusive classes; consequently, Castillo may not claim entitlement to coverage under clause four by asserting that he is both "any person" and a "family member."

However, in articulating their theory of liability as to Castillo, the Smith appellants argue that, although

> [Castillo] was not driving an automobile at the time the accident occurred ... the liability case against him does not revolve around *his* use of the accident vehicle. Instead, it is based on the fact that he illegally delivered alcohol to the driver, Frederick Lawrence, Jr. ("Frederick"), a minor. Frederick became intoxicated as a result of drinking that alcohol and, while driving a motor vehicle under the influence, he struck and killed Mr. Smith.

(Emphasis in original.) In other words, the Smith appellants' theory is that Castillo's liability flows through Lawrence's liability and stems from Castillo's initial delivery of the alcohol to Lawrence, who in turn caused injury to Smith. In this sense, the Smith appellants are attempting to hold Castillo legally responsible for Lawrence's conduct.

The infirmity in the Smith appellants' argument that Castillo is a "covered person" under clause four is that, under their construction as applied to the facts of the case,

Castillo is both "any person" and a "family member." Because we have concluded that those terms, as used in the policy, form mutually exclusive classes, the Smiths appellants' construction is untenable; moreover, even if correct, the theory of legal responsibility inherent in the construction would implicate the "resident relative" exclusion, which, as previously noted, would serve to exclude coverage for Castillo in any event.

■ However, we have often noted that "[b]ecause insurance policies are contracts of adhesion and are premised on standard forms prepared by the insurer's attorneys, we have long subscribed to the principle that they must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer." *Dawes v. First Ins. Co. of Hawai'i, Ltd.,* 77 Hawai'i 117, 121, 883 P.2d 38, 42, *reconsideration denied,* 77 Hawai'i 489, 889 P.2d 66 (1994). Keeping in mind the Smith appellants' theory of liability,[8] we believe the language of clause four is ambiguous as applied to the present factual situation. Resolving such ambiguity in favor of the insured, we further believe that Castillo qualifies as a "covered person" under clause four because *Lawrence* qualifies as "any person" as that term is used in clause four. In tracking the language of clause four, (1) Bitanga's vehicle, which Lawrence was driving at the time of the accident, qualifies as "any auto"; (2) Bitanga's vehicle is not a vehicle of either of the named insureds (Mario or Apolonio Castillo); (3) Lawrence qualifies as "any person"; and (4) the "acts or omissions" for which a "family member" could be held "legally responsible" would be, under the Smith appellants' theory, Castillo's transportation of the alcohol to the party where it was consumed by Lawrence, who later drove and killed Smith. So construed, clause four would read:

> **"Covered person"** as used in this Part means:
>
> 4. For any auto [i.e., Bitanga's vehicle] or **trailer,** other than **your covered auto**

---

8. It is important to note, however, that our acknowledgement of the Smith appellants' theory of liability is solely for the purpose of addressing the coverage issue and should not be construed in any way as an expression of our view with respect to the viability of such a theory or the merits of the underlying tort action. Clearly, AIG's obligation to pay would be contingent on Castillo being found legally responsible for the accident in the underlying tort action.

[i.e., Mario or Apolonio Castillo's vehicles], any person [i.e., Lawrence] or organization but only with respect to legal responsibility for acts or omissions of you or any **family member** [i.e., Castillo's transportation of alcohol to the park] for whom coverage is afforded under this Part....

(Bold in original.)

Accordingly, under this construction, we hold that Castillo is a "covered person" under clause four of the policy. Such construction is consistent with both the classes as established by the terms used in clause four and the theory of liability asserted against Castillo.

■ Unlike the construction originally proffered by the Smith appellants, the theory of legal responsibility inherent in this construction does not implicate the "resident relative" exclusion. As noted above, this construction does not require that Castillo's "legal responsibility" must stem from *Castillo's* "operation, maintenance or use" of a vehicle. For example, in *Scott*, Waters's mother's "legal responsibility" for her son's auto accident was based upon the sponsor relationship between herself and her son as required by the Wisconsin statute. The *Scott* court held that Waters's mother was a "covered person" under clause four, despite the fact that Waters's mother was not involved in the "operation, maintenance or use" of any vehicle.

Moreover, this interpretation is also consistent with AIG's assertion that clause four should be limited to vicarious liability situations, which, as noted above, we have rejected. One who is vicariously liable for the tortious conduct of another, in the motor vehicle context, need not be involved in the "operation, maintenance or use" of a motor vehicle. Inasmuch as the "resident relative" clause only excludes coverage for the "ownership, maintenance or use of any vehicle ... owned by or furnished or available for the regular use of any family member," the exclusion does not apply to Castillo in the present situation because his alleged "legal responsibility" stems from Lawrence's use of

Bitanga's vehicle. Because Castillo is a "covered person" who is not subject to any applicable exclusions under the family policies, Castillo is entitled to coverage under said policies.[9]

### C. *Request for Admissions*

The specific statements that were presented to AIG to admit or deny stated:

6. Under the terms of the Policy issued by Plaintiff AIG to Defendant Castillo, Castillo qualified as a **"covered person."**

38. Under the terms of the Family Policies [defined elsewhere as the AIG auto policies issued to his father and brother] Eric Castillo qualifies as a **"covered person."**

(Emphasis in original.)

Having failed to timely answer the request for admissions, the Smith appellants contend that the statements are deemed admitted. *See* Hawaiʻi Rules of Civil Procedure Rule 36(a) (1990). Thus, the Smith appellants maintain that the trial court erred in ruling that Castillo was not a "covered person" under Castillo's as well as the family policies. Because we have held that AIG is estopped from denying coverage under Castillo's policy, we need not address the issue regarding AIG's failure to timely admit or deny request for admission No. 6. We likewise need not address AIG's failure to timely admit or deny request for admission No. 38 because we have also held that Castillo qualifies as a "covered person" under the terms of the family policies.

### V. CONCLUSION

Based on the foregoing, we hold that AIG is estopped from denying coverage under Castillo's policy. We also hold that Castillo qualifies as a "covered person" under the family policies and the "resident relative" exclusion does not apply to him. Castillo is therefore entitled to coverage under all three policies. We must re-emphasize that the coverage issues analyzed in this appeal are separate and distinct from the issues of liability and damages that inevitably will be at

---

9. See *supra* note 7.

issue in the underlying substantive tort action. Our holding today deals solely with the coverage issues and does not in any way express any opinion as to the merits of the underlying tort action, or the viability of any of the causes of action asserted therein.

The trial court's order granting summary judgment is vacated, and this case is remanded for entry of summary judgment in favor of appellants.