**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000575
04-JUN-2024
07:50 AM
Dkt. 81 SO**

NO. CAAP-19-0000575

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

TERESA L. **Weis**, Claimant-Appellant/Appellant,
v.
PALI MOMI MEDICAL CENTER, Employer-Appellee/Appellee, and
HAWAI'I PACIFIC HEALTH, Insurance Carrier-Appellee/Appellee

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB 2017-289(WH); DCD NO. 9-14-00740)

**SUMMARY DISPOSITION ORDER**
(By: Leonard, Acting Chief Judge, Hiraoka and McCullen, JJ.)

Teresa L. **Weis** appeals from a July 16, 2019 Decision and Order (**D&O**) of the Hawai'i Labor and Industrial Relations Appeals Board (**LIRAB** or the **Board**) for her employer, **Pali Momi** Medical Center, and its insurer, Hawaii Pacific Health. We vacate and remand for further proceedings.

The facts are not disputed. On December 17, 2008, Weis was working at the Kona Community Hospital (which is not a part of Pali Momi) when she was exposed to a patient with tuberculosis (**TB**) disease.[1] Weis was tested and diagnosed with latent TB

---

[1] Not everyone infected with TB bacteria becomes sick. Two TB-related conditions exist: *latent TB infection* and *TB disease*. People with latent TB infection have no symptoms, don't feel sick, and can't spread TB bacteria to others. People with TB disease are sick and may be able to spread TB bacteria to other people. Many people who have latent TB infection never develop TB disease. Some develop TB disease soon after becoming infected, before their immune system can fight the TB bacteria. Other people may get
(continued...)

infection.  She began working for Pali Momi in February 2010 as the imaging department receptionist.  She had latent TB infection and a negative chest x-ray.

On January 23, 2012, Weis was working at Pali Momi when she received a telephone call from the Lanakila TB Center.  She was told she tested positive for TB disease.  She reported this to her supervisor, who reported it to Pali Momi's human resource (**HR**) office.  Weis was placed on leave.  After ten days, the Lanakila TB Center authorized her return to work because she was no longer contagious or a danger to others.  She returned to work in February 2012.

TB can be an occupational injury by disease.  In May 2012, Weis went to Pali Momi's HR office and asked Tameron **Hodges** about filing a workers' compensation claim for TB.  Weis testified that Hodges said, "no, unless you know who the patient breathed on you, or whatever it was."  Weis didn't know who infected her with TB disease, so she didn't think she could file a workers' compensation claim.

Weis resigned from Pali Momi on August 18, 2014. During her HR exit interview that day, she asked if she could file a workers' compensation claim for TB.  The person gave her paperwork to file a claim.  Pali Momi filed a WC-1 report of industrial injury the next day.  Pali Momi denied liability "pending investigation."

Weis filed a WC-5 employee's claim for workers' compensation benefits on October 6, 2014.  The Disability Compensation Division held a hearing on August 22, 2017.  On October 27, 2017, the **Director** of Labor and Industrial Relations denied Weis's claim.  The Director concluded that Weis's claim was time-barred under Hawaii Revised Statutes (**HRS**) § 386-82.

---

[1](...continued)
sick years later when their immune system becomes weak for another reason. See Latent TB Infection and TB Disease, https://www.cdc.gov/tb/topic/basics/tbinfectiondisease.htm (last visited May 6, 2024) [Perma Link https://perma.cc/8KHU-UXNW].

Weis appealed to LIRAB.  LIRAB affirmed the Director. This appeal followed.

Weis doesn't dispute she filed her WC-5 over two years after she knew her TB disease could be related to her work for Pali Momi.  She argues: **(1)** Pali Momi should be equitably estopped from raising the statute of limitations; and **(2)** Pali Momi should be deemed to have accepted her claim because it didn't comply with Hawaii Administrative Rules (**HAR**) §§ 12-10-68(b) and 12-10-73(a).

**(1)**  Weis does not challenge LIRAB's findings of fact. We review LIRAB's decision about estoppel de novo.  Cf. In re Kukui (Molokai), Inc., 143 Hawaiʻi 434, 441, 431 P.3d 807, 814 (2018) ("When the facts underlying a waiver are undisputed it may become a question of law." (cleaned up)).

LIRAB questioned its authority "to grant an equitable remedy to bar a jurisdictional statute of limitations defense." The Director has "original jurisdiction over all controversies and disputes arising under" the Hawaiʻi Workers' Compensation Law, HRS § 386-73 (2015), and has "all powers necessary to facilitate or promote" its "efficient execution[.]"  HRS § 386-71 (2015).  HRS § 386-86 (2015), concerning proceedings and hearings, has no restriction on the Director's authority to consider or apply equitable doctrines such as estoppel.  Case law blending legal and equitable defenses supports this authority. See Ass'n of Apartment Owners of Royal Aloha v. Certified Mgmt., Inc., 139 Hawaiʻi 229, 235, 386 P.3d 866, 872 (2016) (holding that "laches is a defense in all civil actions"); In re Yoneji Revocable Tr., 147 Hawaiʻi 104, 113, 464 P.3d 892, 901 (App. 2020) (noting that laches is "a defense to legal and equitable claims alike" (quoting Royal Aloha, 139 Hawaiʻi at 236, 386 P.3d at 873)).  LIRAB reviews the Director's decisions de novo.  HRS § 386-87 (2015).  It was authorized to decide whether Pali Momi should be equitably estopped from relying on the HRS § 386-82 time bar.

LIRAB found:

> Even if the Board could apply the doctrine of equitable estoppel to toll the limitation period or excuse the late filing of a claim under Chapter 386, ***the record contains no evidence*** from [Weis] that [Hodges] "willfully" caused [Weis] to erroneously believe that she could not file a workers' compensation claim.

(Emphasis added.)

LIRAB's finding was clearly erroneous. Weis testified:

> Q. Okay. So when -- when was the first time you ever had a discussion with any representative of Pali Momi about a workers' comp claim?
>
> A. It was around May 2012. I went downstairs after -- after, like, my lunch hour. And I went down and asked Tameron Hodges, HR person. I asked her. I said, Tameron, can I file workers' compensation for my tuberculosis? And she said, no, unless you know who the patient breathed on you, or whatever it was. And I was like, well, how would I know that? So I just thought I could never do it.
>
> . . . .
>
> Q. Okay. So you didn't file a claim in May of 2012?
>
> A. No, she told me I couldn't.
>
> Q. Okay. And you relied upon that?
>
> A. Yes, I did.
>
> . . . .
>
> Q. Okay. And prior to signing [the WC-5] on September 26th, '14, and then sending it to Department of Labor, why did [sic] you file a claim before that?
>
> A. Because of Tameron Hodges told me I couldn't, unless I knew who the patient was.

Hodges did not testify during the LIRAB hearing. The record does not contain a transcript of her deposition (if one was taken) or a declaration disputing Weis's account. LIRAB did not find that Weis was not credible. LIRAB's statement that "the record contains no evidence" was clearly erroneous.

Weis argues LIRAB erred by concluding she had to show that Pali Momi "willfully" caused her to believe she couldn't file a workers' compensation claim. LIRAB cited <u>Maria v. Freitas</u>, 73 Haw. 266, 273, 832 P.2d 259, 264 (1992) (noting that

4

"equitable estoppel requires proof that one person *wilfully* caused another person to erroneously believe a certain state of things, and that person reasonably relied on this erroneous belief to his or her detriment" (emphasis added)).  But equitable estoppel doesn't always require proof of specific intent by the party to be estopped.  There are two kinds of equitable estoppel: promissory estoppel; and estoppel in pais, or estoppel by conduct.  Fred v. Pac. Indem. Co., 53 Haw. 384, 387, 494 P.2d 783, 785 (1972).

> [P]romissory estoppel may arise as an application of the general principle of equitable estoppel to certain situations where a promise has been made, even without consideration, if it was **intended** that the promise be relied upon and was in fact relied upon, and a refusal to enforce it would be virtually to sanction the perpetration of fraud or result in other injustice.
>
> To constitute estoppel in pais the party against whom it is sought to be enforced must have **made some representation** the effect of which would be to influence the conduct of the one seeking to enforce the estoppel and induce him to change his position so as to materially injure him if the party making the representation is allowed to deny its truth.

Id. at 388, 494 P.2d at 786 (emphasis added) (citations omitted).

In a case involving estoppel by conduct, we held:

> It is well-settled that a defendant cannot avail her[self] or himself of the bar of the statute of limitations, if it appears that he or she has **done anything that would tend to lull the plaintiff into inaction**, and thereby permit the limitation prescribed by the statute to run . . . .  One invoking equitable estoppel must show that he or she has detrimentally relied on the representation or conduct of the person sought to be estopped, **and that such reliance was reasonable**.

Vidinha v. Miyaki, 112 Hawaiʻi 336, 342, 145 P.3d 879, 885 (App. 2006) (cleaned up) (emphasis added).

Weis argues she didn't file a written claim because she relied on Hodges telling her she couldn't file one unless she knew who infected her with TB.  Weis had the burden to prove her reliance was reasonable.  Vidinha, 112 Hawaiʻi at 342, 145 P.3d at 885.  LIRAB found, and Weis doesn't dispute:

     mm. [Weis] testified that other than [Hodges], she did not ask the Department of Labor and Industrial Relations or anyone else for information about filing workers' compensation claims.

     nn. [Weis] testified that [Pali Momi] posted information about filing workers' compensation claims in the lunchroom at work, but she did not pay close attention to it, because she did not think something like this would happen to her.

   HRS § 386-99 (2015) requires that an employer "post and maintain in places readily accessible to individuals in the employer's employ printed statements concerning benefit rights, claims for benefits, and such other matters relating to the administration of this chapter as the department of labor and industrial relations may by regulation prescribe."  HAR § 12-10-68 requires that an employer post "a printed statement, 'Notice to Employees', [sic] issued by the director."  The record shows that Pali Momi met these requirements.  But the record does not show the contents of the Notice to Employees, or what Weis would have learned had she read it or any other information Pali Momi provided to employees about the Workers' Compensation Law.  LIRAB did not determine whether Weis's reliance on Hodges' statement was reasonable.  On remand, LIRAB should apply the proper standards to decide whether Pali Momi should be estopped from relying on the HRS § 386-82 statute of limitations.

   **(2)** Weis argues Pali Momi should be deemed to have accepted her claim because it didn't comply with HAR §§ 12-10-68(b) and 12-10-73(a).  HAR § 12-10-68(b) requires that an employer give an injured employee a copy of a brochure, "Highlights of the Hawaii Workers' Compensation Law," "within three working days of notice of the injury[.]"  Pali Momi contends HAR § 12-10-68(b) "is not an issue on appeal," because HAR § 12-10-30 requires that an employee file a WC-5 and HRS § 386-81 requires "written notice of the injury[.]"  But HRS § 386-81 also provides that failure to give written notice "shall not bar a claim under this chapter if . . . [t]he employer . . . had knowledge of the injury[.]"  HAR § 12-10-68(b) required that

Pali Momi give the brochure to Weis in May 2012, when she asked Hodges about filing a workers' compensation claim for TB. But Weis cites no authority for the proposition that Pali Momi is *deemed* to have accepted compensability under these circumstances, and we find none. At most, Pali Momi's failure to give Weis the brochure, like Weis' failure to read the poster in the lunchroom, goes to whether Weis reasonably relied on what Hodges said. That is something LIRAB must decide on remand.

HAR § 12-10-73(a) requires that an employer who denies or does not accept compensability "submit a written report to the director and the injured employee within thirty calendar days supporting the denial." Failure to submit the report "shall *indicate* acceptance of the injury by the employer" (emphasis added). The regulation does not state that the employer's failure to submit the report *shall be* an acceptance of compensability, and Weis cites no authority supporting that interpretation. Cf. Beck v. City & Cnty. of Honolulu, Case No. AB 2008-500, 2010 WL 11504543, at *5 (LIRAB Mar. 24, 2010) (noting that neither HAR § 12-10-73 "nor any other provision in Chapter 386, HRS provides that failure to issue a written denial to Claimant *operates* as an acceptance of liability for a work injury." (emphasis added)).

For these reasons, we vacate LIRAB's July 16, 2019 Decision and Order and remand for further proceedings consistent with this summary disposition order.

DATED: Honolulu, Hawaiʻi, June 4, 2024.

On the briefs:

Charles H. Brower,
for Claimant-Appellant/
Appellant.

Scott G. Leong,
Christine J. Kim,
for Employer-Appellee/
Appellee and Insurance
Carrier-Appellee/Appellee.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge