952 P.2d 893

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**Machelle DACANAY and Lourdes Flores, Defendants–Appellants.**

No. 19757.

Intermediate Court of Appeals of Hawai'i.

Feb. 27, 1998.

Kenneth T. Okamoto and Lawrence R. Cohen, Price Okamoto, Himeno & Lum, on the briefs, Honolulu, for defendants-appellants.

Randall Y.S. Chung and Thomas Tsuchiyama, Matsui Chung Sumida & Chang, on the brief, Honolulu, for plaintiff-appellee.

Before WATANABE and ACOBA, JJ., and DEL ROSARIO, Circuit Judge, in place of BURNS, C.J., recused.

ACOBA, Judge.

We hold that for purposes of determining the amount to be paid to an insured on an insurance policy claim for underinsured motorist benefits, a "general damages only" settlement between the underinsured motorist and/or that motorist's insurance company on the one hand, and the insured on the other, does not conclusively establish, as a matter of law, the value of the general damages, but is evidence of the general damages suffered by the insured.

Because it is evidence pertinent and material to determining the amount of an insured's damages for bodily injury, a general damages only settlement must be considered by the arbitrator in an arbitration proceeding to determine underinsured motorist benefits. We conclude that the foregoing premises would apply in this case.

The arbitrator, however, did not consider the general damages only settlement entered into by the insureds, Defendants–Appellants Machelle Dacanay (Dacanay) and Lourdes Flores (Flores) (collectively Appellants) in the arbitration proceeding with their insurer, Plaintiff–Appellee State Farm Mutual Automobile Insurance Company (State Farm). Nevertheless, because Appellants did not move to vacate, modify, or correct the award, we conclude that the award became final.

Accordingly, we affirm the March 7, 1996 declaratory judgment of the first circuit court (the court) in favor of State Farm and against Appellants, although on grounds different from those relied on by the court.

## I.

### A.

On May 26, 1989, Dacanay and Flores were passengers in a motor vehicle operated by Rosalee P. Lum (Lum) and insured by State Farm. Lum's motor vehicle was struck by a motor vehicle operated by Hae Suk Hinokuma (Hinokuma). Dacanay and Flores both suffered injuries as a result of the accident. Because occupants of Lum's vehicle were "insured" persons under the terms of her automobile insurance policy with State Farm, both Dacanay and Flores were persons entitled to benefits under the policy.

By a letter dated June 13, 1990, Appellants notified State Farm of their intention to settle a portion of their personal injury claims with Hinokuma's insurer, Allstate Insurance Company (Allstate), and to pursue underinsured benefits under Lum's policy with State Farm. Appellants cite this letter as evidence that State Farm did not object to the terms and conditions of the proposed "general damages only" settlement after State Farm "was given the chance to review and, if it chose, to object to the proposed partial settlement of Appellants' bodily injury claims." [1]

---

1. The June 13, 1990 letter did not expressly indicate that the settlements of Defendants–Appellants Machelle Dacanay and Lourdes Flores (Appellants) were for "general damages only." This letter to Plaintiff–Appellee State Farm Mutual Automobile Insurance Company (State Farm) indicated that State Farm was aware of the settlement negotiations between Appellants and Allstate Insurance Company (Allstate). The relevant portion of the letter stated:

Thank you for discussing the matter with me on June 12. As you were advised, [Appellants'] bodily injury claims against [Allstate] are pending settlement. [The] Adjuster has offered the basic policy limits for each of them and since the injuries are quite severe, you were advised therefore in our phone conference that they

On June 22, 1990, Appellants settled their bodily injury claims for general damages against Hinokuma and Eric Hinokuma[2] (collectively the Hinokumas) for $35,000 each, the full limits of the Hinokumas' policy. The relevant provisions of the release agreements signed by Dacanay and Flores stated as follows:

I hereby agree that, as further consideration and inducement for this compromise settlement, this settlement shall apply to all unknown and unanticipated injuries and damages resulting from said accident, casualty or event, as well as those now disclosed.

I understand that the parties hereby released admit no liability of any sort by reason of said accident and that *said payment and settlement in compromise is made to terminate further controversy respecting all claims for damages* that I have heretofore asserted or that I or my personal representative might hereafter assert because of said accident.

I further understand that such liability as we may or shall have incurred, directly or indirectly, in connection with or for damages arising out of the accident to each person or organization released and discharged of liability herein, and to any other person or organization, is expressly reserved to each of them, such liability not being waived, agreed upon, discharged nor settled by this release.

*This is a settlement for general damages only.* This settlement is intended to be for general damages only and *not intended to duplicate those damages which have been paid for medical and/or wage loss incurred.*

(Emphases added.)

In a letter dated June 23, 1994 to State Farm, Appellants set forth the history of their claim. This letter stated, in relevant part:

As you are aware, each of our clients settled her bodily injury claim for the policy limits of the negligent driver of $35,000, *general damages only.* Before the settlements were effected State Farm was notified of the potential resolution of our clients' claims, the terms of the potential resolution and the imminent [underinsured motorist] claims that would thereafter be pursued. In fact, in order to verify the terms of the bodily injury settlements State Farm demanded copies of the release documents and the declaration page of the negligent driver's insurance policy. Clearly, State Farm has always known the settlements were for general damages only. More importantly State Farm did not object at anytime to the settlements.

(Emphasis in original.)

Believing that the settlement with the Hinokumas and Allstate compensated them for general damages[3] only, Appellants sought payment for their special damages under the underinsured motor vehicle (the UIM) provi-

---

are pursuing underinsured motorist claims [against State Farm] should the offers be accepted. Please be advised, however, that our clients intend to accept the offers and settle their claims against Allstate for the bodily injury policy limits.

2. The record is unclear as to Eric Hinokuma's relationship to Hae Suk Hinokuma.

3. The supreme court has defined general and special damages as follows:

General damages are said to encompass all the damages which naturally and necessarily result from a legal wrong done. Such damages follow by implication of law upon proof of a wrong. On the other hand, special damages are considered to be the natural but not the necessary result of an alleged wrong and are such that they do not follow by implication of

law merely upon proof of a wrong. In other words, special damages do not arise solely from the wrongful act itself, but rather depend on the circumstances peculiar to the infliction of each particular injury.

*Ellis v. Crockett*, 51 Haw. 45, 50, 451 P.2d 814, 819 (1969) (citations omitted).

This court has elaborated on specific examples of general and special damages:

General damages ... include such items as physical pain and suffering, inconvenience, and loss of enjoyment which cannot be measured definitively in monetary terms.... Special damages are often considered synonymous with pecuniary loss and include such items as medical and hospital expenses, loss of earnings, and diminished capacity to work.

*Dunbar v. Thompson*, 79 Hawai'i 306, 315, 901 P.2d 1285, 1294 (App.1995) (emphasis in original; internal quotation marks and citations omitted).

sion[4] of Lum's State Farm policy.[5] Dacanay sought payment for special damages in the amount of $14,863.60 and Flores sought payment for special damages in the amount of $15,000. The UIM provision provided, in pertinent part, that:

> [State Farm] will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *underinsured motor vehicle*. The *bodily injury* must be caused by the accident arising out of the operation, maintenance or use of an *underinsured motor vehicle*.

(Bold-faced and italicized emphases in original.)

The policy defined an "Underinsured Motor Vehicle" as:

> a land motor vehicle:
>
> 1. the ownership, maintenance or use of which is insured or bonded for bodily injury liability at the time of the accident; *but*
>
> 2. whose limits of liability for bodily injury *are less than the liability imposed by law for the* **insured's** *damages*.[6]

(Bold-faced and italicized emphasis in original; underscored emphases added.)

The policy went on to define an "insured" as, *inter alia*, "any person occupying [the policyholder's] car. . . ."

If the insured and State Farm could not agree that "the *insured* [was] legally entitled to collect damages from the owner or driver of the *underinsured motor vehicle*" or "in what amount" the damages were, the policy provided that these questions "be decided by arbitration upon written request of the *insured* or [State Farm]."[7] (Bold-faced and italicized emphases in original.)

While the record indicates that Appellants sought payment of their special damages under the UIM provision, it is unclear who requested the matter be submitted to arbitration. Both parties agree, however, that arbitration was initiated under the foregoing policy provision.

### B.

On April 28, 1993, the arbitrator issued his award. Pursuant to the parties' agreement, the award segregated Appellants' damages into the three categories of "Medicals," "Wage Loss," and "General Damages." The relevant portion of the arbitration award stated:

> I [the arbitrator] have not made any reductions or deductions from this award. Specifically, I have not deducted for any settlement of the underlying bodily injury claim, nor have I made any deductions for no-fault payments received by the parties. Further, pursuant to your agreement and instructions I am breaking down my award into medicals, wage loss and general damages.

---

4. "The purpose of [underinsured motorist] coverage is to 'provide protection, through voluntary insurance, for persons who are injured by underinsured motorists whose liability policies are inadequate to pay for personal injuries caused by motor vehicle accidents.'" *National Union Fire Ins. Co. v. Reynolds*, 77 Hawai'i 490, 495, 889 P.2d 67, 72 (App.1995) (quoting Hse. Stand. Comm. Rep. No. 1150, in 1988 House Journal, at 1248). Underinsured motorist benefits are intended "to provide additional insurance coverage to seriously injured persons who had the foresight to contract for such additional coverage." *Caberto v. National Union Fire Ins. Co.*, 77 Hawai'i 39, 45, 881 P.2d 526, 532 (1994).

5. Where underinsured coverage was not rejected, Hawai'i Revised Statutes (HRS) § 431:10C–301(b)(4) (Supp.1989), provided, in relevant part:

> (b) A motor vehicle insurance policy shall include:
>
> . . . .

(4) Coverage for loss resulting from bodily injury or death suffered by any person legally entitled to recover damages from owners or operators of underinsured motor vehicles.

6. HRS § 431:10C–103(22) (1993) similarly defines an "underinsured motor vehicle" as "a motor vehicle with respect to the ownership, maintenance or use for which sum of the limits of all bodily injury liability insurance coverage and self-insurance applicable at the time of the loss is less than the liability for damages imposed by law."

7. Although the arbitration provision in the underinsured motor vehicle coverage provided for arbitration to take place before a panel of three arbitrators and the written decision of any two would make such arbitration binding, the record indicates that the parties apparently agreed to arbitration before a single arbitrator.

MACHELLE DACANAY

| | |
|---|---|
| Medicals | $ 9,077.04 |
| Wage Loss | 5,786.56 |
| General Damages | 23,000.00 |
| | |
| [Total | $37,863.60] |

LOURDES FLORES

| | |
|---|---|
| Medicals | $ 9,799.45 |
| Wage Loss | 10,495.95 |
| General Damages | 20,000.00 |
| | |
| [Total | $40,295.40] |

Thus, the arbitrator's findings of general damages were $12,000 less than the amount obtained in Dacanay's settlement agreement and $15,000 less than the amount obtained in Flores' settlement agreement. Neither Appellants nor State Farm moved to vacate, modify, or correct the arbitration award as allowed by Hawai'i Revised Statutes (HRS) chapter 658 (1993), which governs arbitration proceedings, or moved to clarify the award.

State Farm subsequently tendered $2,863.60 to Dacanay, calculated by subtracting the $35,000 settlement payment from the total arbitration award of $37,863.60, and $5,295.40 to Flores, calculated by subtracting the $35,000 settlement payment from the total arbitration award of $40,295.40. State Farm cited the following "limit of liability" policy provision as the basis for its tender:

**Limit of Liability**

. . . .

4. The most we pay will be the lesser of:

a. the difference between the amount of the *insured's* damages for *bodily injury* and the amount paid to the *insured* by or for any *person* or organization who is or may be held legally liable for *bodily injury;*

or

b. the limit of liability of this coverage.

(Bold-faced and italicized emphases in original.)

Appellants rejected State Farm's tender and requested payment of special damages in the amount determined in arbitration. State Farm refused Appellants' request.

### C.

On May 13, 1995, State Farm filed a complaint for declaratory or other relief with the court. In the complaint, State Farm sought a declaratory judgment from the court declaring that "[Dacanay] is entitled to payment of no more than $2,863.60, and [Flores] to payment of no more than $5,295.40 in underinsured motorists benefits."

On September 7, 1995, Appellants filed their answer to State Farm's complaint.[8] Appellants requested that the court dismiss the complaint, or, in the alternative, "declare that [Dacanay] is entitled to payment in the amount of $14,863.60 from [State Farm], and that [Flores] is entitled to payment in the amount of $20,295.40[.]"

On September 11, 1995, State Farm filed its motion for summary judgment. In its supporting memorandum, State Farm argued that the UIM limit of liability provision clearly and unambiguously permitted it to offset the arbitration award by the $35,000 each Appellant received from her settlement agreement.

On October 12, 1995, Appellants filed their cross-motion for summary judgment and memorandum in opposition to State Farm's motion for summary judgment. Appellants essentially argued that State Farm improperly "merge[d]" special and general damages for purposes of determining the amount of coverage allowed under the UIM provision.

On November 9, 1995, State Farm filed a reply memorandum contending that Appellants' settlement agreements did not establish the value of their claims, but only compromised their claims to avoid further litigation. State Farm asserted that it had not reduced any of Appellants' special or general damages, but had tendered the required amount under the arbitration award.

On December 26, 1995, Appellants filed a reply memorandum in support of their cross-motion. In their reply, Appellants reassert-

---

**8.** The record does not contain an explanation of why Appellants filed their answer almost five months after State Farm's complaint.

ed their argument that general and special damages should not be "merged." Appellants also contended that State Farm should be estopped from using the settlement amount to offset their special damages claim because State Farm had not objected to the "terms and details of the settlement agreement."

On December 28, 1995, the court heard the motions for summary judgment. The court orally granted State Farm's motion for summary judgment and denied Appellants' cross-motion for summary judgment.

On February 1, 1996, the court entered a written order denying Appellants' cross-motion for summary judgment.

On February 5, 1996, the court entered a written order granting State Farm's motion for summary judgment. This order provided, in relevant part:

Pursuant to [the UIM] endorsement of the [State Farm] policy, [Dacanay] is entitled to the following:

| | |
|---|---|
| Medicals | $ 9,077.04 |
| Wage Loss | 5,786.56 |
| General Damages | 23,000.00 |
| Total UIM arbitration award | 37,863.60 |
| Less "general damages only" settlement with tortfeasor | -35,000.00 |
| **Total UIM benefits recoverable** | $ 2,863.60 |

[Flores] is entitled to the following:

| | |
|---|---|
| Medicals | $ 9,799.45 |
| Wage Loss | 10,495.95 |
| General Damages | 20,000.00 |
| Total UIM arbitration award | $40,295.40 |
| Less "general damages only" settlement with tortfeasor | -35,000.00 |
| **Total UIM benefits recoverable** | $ 5,295.40 |

The order provided no reasoning as to how the court reached this conclusion. Based on the foregoing order, however, it appears the court adopted State Farm's contention that State Farm was authorized to reduce the arbitrator's total award by the general damages settlement amounts received by Appellants.

On March 7, 1996, the court entered judgment on the February 1, 1996 order denying Appellants' cross-motion for summary judgment and the February 5, 1996 order granting State Farm's motion for summary judgment.

On March 28, 1996, Appellants appealed.

## II.

### A.

This court reviews an award of summary judgment under the same standard applied by the trial courts. *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 104, 839 P.2d 10, 22, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992) (citation omitted). Pursuant to Hawai'i Rules of Civil Procedure Rule 56(c), summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Dawes v. First Ins. Co. of Hawai'i*, 77 Hawai'i 117, 121, 883 P.2d 38, 42, *reconsideration denied*, 77 Hawai'i 489, 889 P.2d 66 (1994). We note that Appellants do not argue that there are any genuine issues of material fact which would make summary judgment improper.

### B.

Appellants' fundamental position on appeal is that the court erred in applying a part of their general damages only settlements to reduce the special damages recoverable under the UIM coverage. They maintain the settlements conclusively established their general damages at $35,000 each and that, therefore, the arbitrated award of $23,000 for Dacanay and $20,000 for Flores in general damages was not controlling.

We view the controversy as one over the effect to be given the general damages only settlement as opposed to the general damages award made in arbitration.

The effect to be given a general damages only settlement has been discussed in two previous cases in our jurisdiction. While these two cases are factually dissimilar from each other and from this case, the basic proposition common to them and the instant case is that a general damages only settlement and " 'release are not conclusive and binding as a matter of law, [but] are only evidence' " of the general damages suffered. *Pacific Ins. Co. v. Esperanza*, 73 Haw. 403, 410, 833 P.2d 890, 893 (1992) (quoting *First Ins. Co. of Hawaii v. Jackson*, 67 Haw. 165, 167, 681 P.2d 569, 570 (1984)).

In *Jackson*, Jackson was injured in an automobile accident. *Jackson*, 67 Haw. at 166, 681 P.2d at 570. Jackson's insurer paid Jackson $8,459.74 in no-fault benefits. *Id.* Jackson and his wife sued the tortfeasor for $110,000 in general damages and special damages in an amount to be proven at trial. *Id.* The Jacksons and the tortfeasor then executed a $25,000 general damages only settlement agreement and release. *Id.* Subsequently, Jackson's insurer sued him for one-half of the no-fault benefits paid. *Id.* Jackson argued that the release was conclusive and binding on the issue of general damages. *Id.* at 167, 681 P.2d at 570. The trial court agreed and granted summary judgment in favor of Jackson. *Id.* This court vacated the judgment and the supreme court affirmed in part, holding that "the terms of the release [were] not conclusive and binding as a matter of law[;] they [were] only evidence." *Id.* On remand, the supreme court instructed that the burden of proof was on the insurer to prove that the settlement duplicated no-fault benefits paid. *Id.* at 167, 681 P.2d at 571.

In *Esperanza*, Esperanza was injured in an automobile accident and received $4,641.13 in temporary disability insurance (TDI) benefits from his employer's TDI insurer. *Esperanza*, 73 Haw. at 404, 833 P.2d at 891. The TDI insurer gave notice of its subrogation rights to Esperanza and the tortfeasor's insurer. *Id.* Subsequently, the tortfeasor and the tortfeasor's insurer settled with Esperanza for "general damages only." *Id.* The release provided that "[t]his is for general damages release non-duplicative of no-fault, medical and loss of wages." *Id.* The TDI insurer filed a complaint alleging it should be reimbursed for the full amount of the TDI benefits it paid to Esperanza. *Id.* Both the TDI insurer and Esperanza filed motions for summary judgment. *Id.* The trial court granted the TDI insurer's motion for summary judgment. *Id.* at 405, 833 P.2d at 891. On appeal, the supreme court vacat-

ed the judgment and remanded the case. *Id.* at 411, 833 P.2d at 894.

Relying on *Jackson*, the supreme court rejected both Esperanza's argument that the release constituted unambiguous and conclusive evidence that the settlement did not compensate him for wage loss as a matter of law and the TDI insurer's argument that the settlement duplicated TDI benefits as a matter of law. *Id.* at 410, 833 P.2d at 894. The supreme court remanded to the circuit court and instructed that the TDI insurer prove that the settlement duplicated no-fault benefits paid for lost wages and the extent of the duplication. *Id.*

The same evidentiary status has been accorded settlements between the insured and the tortfeasor's insurer in the context of underinsured motorist coverage. Hence, "[e]ven an actual settlement [between the insured and the tortfeasor's liability insurer] . . . does not fix the 'value' of injuries actually sustained by the [insured]" for purposes of determining UIM coverage. 3 *No–Fault and Uninsured Motorist Automobile Insurance* § 30.80[2], at 30–130 (Bender 1997).

 Accordingly, we conclude that for purposes of an underinsured motorist claim, a general damages only settlement between the underinsured motorist and/or that motorist's insurance company on one hand, and the insured on the other, does not conclusively establish, as a matter of law, the value of general damages, but is evidence of the general damages suffered by the insured. The question of whether a general damages only settlement duplicated special damages is a question of fact. As suggested in *Jackson* and *Esperanza*, if the settlement amount is attacked by the insured's insurer, the insurer should carry the burden of proving that the actual general damages suffered by its insured were less than that for which the insured settled.[9]

---

9. We do not find Appellants' other arguments concerning general damages and special damages persuasive. Since the arbitration determined the amount of general damages and special damages suffered by Appellants, there was no violation of HRS § 663–1 (1993), which permits the recovery of "direct and consequential damage" in tort actions, or HRS § 663–8.5

(1993), which permits tort awards for "non-economic damages." Similarly, we see no analogy between the instant case and *Dunbar*, where this court concluded that "a jury verdict which awards the [personal injury] plaintiff special damages but no general damages . . . is generally regarded as improper." *Dunbar*, 79 Hawai'i at 315, 901 P.2d at 1294. Finally, we do not be-

## III.

However, the procedural posture of this case is unlike *Jackson* and *Esperanza*. In those cases, the actual amount of general damages remained to be factually determined in circuit court proceedings. In the instant case, the UIM provision contractually provided for arbitration between the parties.

■ We recognize *Jackson* and *Esperanza* arose in the context of a motion for summary judgment which required the trial court to sift questions of fact from matters of law, while the instant case concerns arbitration proceedings in which such strictures do not necessarily concern an arbitrator. However, we believe that a general damages only settlement agreement would, at the least, be "evidence pertinent and material to the controversy," *see* note 11 *infra*, concerning "the amount of the insured's damages for bodily injury" or similar formulations contained in UIM limit of liability provisions in automobile insurance policies.[10] As a result, we conclude that the arbitrator was required to consider the settlement amount of $35,000 as evidence of the general damages suffered by the insureds.

Obviously, if the arbitrator here had determined that the arbitrated general damages were identical to the settlement amounts, Appellants would be entitled to underinsured motorist coverage for their uncompensated special damages. If the arbitrator determined that the arbitrated general damages were less than the settlement amounts, any excess amount, i.e., "the difference," would be treated as a setoff against the remaining underinsured motorist liability of the insurer under the limit of liability provision in the policy. The effect of the arbitrator's award here led to the latter course.

There is no indication in the record, however, that the arbitrator considered the set-tlement amount of $35,000 as evidence of the insureds' general damages. Of course, had they chosen to, the parties could have agreed that the arbitrator be instructed to include consideration of Appellants' settlements in his determination.

## IV.

■ In any event, none of the parties challenged the validity of the arbitration agreement or procedures. Neither Dacanay nor Flores moved to vacate, modify, or correct the arbitrator's award pursuant to HRS chapter 658 or to clarify the award. Because Appellants did not move to vacate, modify, or correct the award pursuant to HRS chapter 658, they waived their right to judicial review of the arbitration award. *Excelsior Lodge Number One v. Eyecor, Ltd.*, 74 Haw. 210, 222–23, 847 P.2d 652, 658 (1992); *Ass'n of Apartment Owners of Tropicana Manor v. Jeffers*, 73 Haw. 201, 213, 830 P.2d 503, 510 (1992). Hence, the April 28, 1993 arbitration award became conclusive upon the parties. *Mathewson v. Aloha Airlines, Inc.*, 82 Hawai'i 57, 70, 919 P.2d 969, 982 (1996) ("An arbitration award, if made in good faith, is conclusive upon the parties[.]") (citations and internal quotation marks omitted).

Had Appellants timely moved to vacate, modify or correct the arbitration award, we note that judicial review would be limited "[b]ecause of the legislative policy to encourage arbitration and thereby discourage litigation[.]" *Jeffers*, 73 Haw. at 205, 830 P.2d at 508. Appellants would have had to ground their request for relief on one or more of the seven statutory grounds upon which courts may vacate, modify or correct an arbitration award.

Courts are authorized to vacate an arbitration award based on only four grounds

---

lieve State Farm's underinsured motor vehicle limit of liability provision is contrary to public policy because the "amount of the insured's damages for bodily injury" was determined by "merging" the arbitrator's general and special damage awards as Appellants assert. Under the limit of liability provision, the amount recovered by the insured from the tortfeasor reduces the insured's amount of actual *damages* for purposes of determining underinsured coverage. The amount of the insured's recovery from the tortfeasor is, thus, not used to reduce the insurance company's limit of underinsured coverage for the insured.

**10.** We believe, thus, that the same obligation on the part of the arbitrator applies even where the parties have not requested the arbitrator to segregate special from general damages.

specified in HRS § 658–9[11], and to modify or correct an award on only the three grounds specified in HRS § 658–10.[12] *Mars Constructors[, Inc. v. Tropical Enters., Ltd.,* 51 Haw. 332, 336, 460 P.2d 317, 320 (1969) ]. Sections 658–9 and 658–10 "also restrict the authority of [appellate courts] to review judgments entered by the circuit courts confirming ... arbitration awards[.]" *Id.* at 336, 460 P.2d at 320. *Mathewson,* 82 Hawai'i at 69, 919 P.2d at 981 (quoting *Jeffers,* 73 Haw. at 205–07, 830 P.2d at 506–07; some brackets in original).

■ A party may also move for clarification of an ambiguous arbitration award because "the Hawai'i Supreme Court has adopted a judicially recognized exception to HRS chapter 658, [which] allow[s] a party to move in circuit court for 'clarification' by the arbitrator of an ambiguous arbitration award because 'clarification ... does not fit within the literal definition of vacating, modifying, or correcting an award.' "[13] *Marine Div. of Int'l Longshoremen's and Warehousemen's Union v. Sause Bros.,* 77 Hawai'i 187, 193, 881 P.2d 1255, 1261 (App.1994) (quoting *Gozum v. American Int'l Adjustment Co.,* 72 Haw. 41, 44, 805 P.2d 445, 446 (1991)).

This limited judicial review is also consistent with the proposition that "[i]n most states that enforce the arbitration clause in [underinsured motorist coverage claims], the courts generally grant a great deal of deference to the arbitrator's decision." 3 *No-Fault and Uninsured Motorist Automobile Insurance* § 30.80[5], at 30–143. We note, further, that in their briefs to the court and to this court Appellants found the arbitrator "carefully and fairly evaluated each of the different types of injuries sustained by each [of the Appellants] and made an award which he thought was reasonable and justified under the circumstances."

■ Because the arbitrator's award which specifically determined Appellants' general and special damages was conclusive and the award was not appealed to the circuit court, the amount of Appellants' general damages was established by the arbitration award. Thus, we conclude the court's disposition of the instant case was ultimately correct, although we hold so on different grounds than that relied on by the court. *Reyes v. Kuboyama,* 76 Hawai'i 137, 140, 870 P.2d 1281, 1284 (1994) ("[An appellate] court my affirm a grant of summary judgment on any ground appearing in the record, even if the circuit court did not rely on it.").

### V.

### A.

Before the court, Appellants argued that State Farm should be estopped from disput-

---

11. HRS § 658–9 (1993) provides:

> **Vacating award.** In any of the following cases, the court may make an order vacating the award, upon the application of any party to the arbitration:
> (1) Where the award was procured by corruption, fraud, or undue means;
> (2) Where there was evident partiality or corruption in the arbitrators, or any of them;
> (3) Where the arbitrators were guilty of misconduct, in refusing to postpone the hearing, upon sufficient cause shown, *or in refusing to hear evidence, pertinent and material to the controversy;* or of any other misbehavior, by which rights of any party have been prejudiced;
> (4) Where the arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award, upon the subject matter submitted, was not made.
> Where an award is vacated and the time, within which the agreement required the award to be made, has not expired, the court may in its discretion direct a rehearing by the arbitrators.

(Emphasis added.)

12. HRS § 658–10 (1993) provides:

> **Modifying or correcting award.** In any of the following cases, the court may make an order modifying or correcting the award, upon application of any party to the arbitration:
> (1) Where there was an evident miscalculation of figures, or an evident mistake in the description of any person, thing, or property, referred to in the award;
> (2) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted;
> (3) Where the award is imperfect in a matter of form, not affecting the merits of the controversy.
> The order may modify and correct the award, so as to effect the intent thereof, and promote justice between the parties.

13. We do not consider the arbitrator's award in this case to be ambiguous.

ing their right to the arbitrated special damages. They pointed to the fact that State Farm did not object to the release agreements specifying that Appellants' settlements were for general damages only.[14]

### B.

It is important to note that Appellants did not plead the affirmative defense of estoppel as required by HRCP Rule 8(c). However, if evidence of an affirmative defense is introduced and not objected to on the ground that it was not pleaded, the failure to plead the affirmative defense is immaterial. *Wilson v. Kealakekua Ranch, Ltd.*, 57 Haw. 124, 125–27, 551 P.2d 525, 527 (1976). Although Appellants did not raise their estoppel argument until their reply brief in support of their motion for summary judgment, since State Farm did not object to Appellants' estoppel argument, we consider it.

### C.

In its motion for summary judgment, State Farm did not have the initial burden of disproving Appellants' affirmative defense of estoppel in order to prevail on its motion. *GECC Financial Corp. v. Jaffarian*, 80 Hawai'i 118, 119, 905 P.2d 624, 625 (1995) (adopting Acoba, J.'s concurring opinion in *GECC Financial Corp. v. Jaffarian*, 79 Hawai'i 516, 525, 904 P.2d 530, 539 (App.1995)). State Farm was obligated only to disprove Appellants' affirmative defense of estoppel after Appellant had produced "material in support of the affirmative defense." *Jaffarian*, 79 Hawai'i at 526, 904 P.2d at 540.

In *AIG Hawai'i Ins. v. Smith*, 78 Hawai'i 174, 891 P.2d 261, *reconsideration denied*, 78 Hawai'i 421, 895 P.2d 172 (1995), the supreme court had "the opportunity to discuss the principles of estoppel in the automobile insurance context[.]" *State Farm Mutual Auto. Ins. Co. v. GTE Hawaiian Tel. Co.*, 81 Hawai'i 235, 243–44, 915 P.2d 1336, 1344–45 (1996). It said that "absent manifest injustice, 'the party invoking equitable estoppel must show that he or she has detrimentally relied on the representation or conduct of the person sought to be estopped, *and* that such reliance was reasonable.'" *Id.* at 244, 915 P.2d at 1345 (quoting *Smith*, 78 Hawai'i at 179, 891 P.2d at 266 (emphasis in original)).

Thus, Appellants, in the absence of manifest injustice, were required to demonstrate reliance on a representation or on conduct of State Farm which was detrimental to them and, further, that such reliance was reasonable. Appellants, however, did not produce any evidence to that effect. They did not support their cross-motion with any affidavits which indicated how Appellants relied on State Farm's "representation or conduct," why such reliance was detrimental,[15] or that such reliance was reasonable. Appellants did not argue there was "manifest injustice." Appellants thus failed to raise a genuine issue of material fact or to adduce evidence of their estoppel claim which would have

---

**14.** On appeal, Appellants further assert that in preparing and presenting their claims in arbitration, they relied upon State Farm's "approval" of their settlement and State Farm's request that special damages be awarded separately in the arbitration award.

Appellants also contend on appeal that State Farm waived any objections to the conclusive nature of the general damages settlement amounts because State Farm did not object to the settlement terms.

Appellants did not raise these matters with the court. On appeal, this court will not consider an issue not raised below unless justice so requires. *Earl M. Jorgensen Co. v. Mark Constr. Inc.*, 56 Haw. 466, 476, 540 P.2d 978, 985 (1975); *Han v. Yang*, 84 Hawai'i 162, 176–77, 931 P.2d 604, 618–19 (App.1997). In determining whether to address a new issue raised on appeal, this court must decide " 'whether consideration of the issue requires additional facts; whether the resolution of the question will affect the integrity of the findings of fact of the trial court; and whether the question is of great public importance.' " *Jorgensen Co.*, 56 Haw. at 476, 540 P.2d at 985 (quoting *Fujioka v. Kam*, 55 Haw. 7, 9, 514 P.2d 568, 570 (1973)). We cannot discern, nor do Appellants demonstrate, that this issue is of great public importance. Thus, we need not address these arguments.

**15.** Although Appellants raised the defense of estoppel before the court, the first mention of any reliance is in their opening brief on appeal, where they assert that "[they] reasonably relied upon [State Farm's] approval of the 'general damages only' settlement in subsequently preparing and presenting [their] claim at the [underinsured motorist] arbitration hearing."

precluded the court from denying their cross-motion and from granting State Farm's motion for summary judgment.

## VI.

For the foregoing reasons, we affirm the March 7, 1996 judgment entered in favor of State Farm and against Appellants but on the grounds set forth herein.