**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-15-0000188**
**16-APR-2020**
**07:55 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

IN THE MATTER OF MITSUO YONEJI
REVOCABLE TRUST DATED NOVEMBER 27, 1985

NO. CAAP-15-0000188

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(T. NO. 13-1-0004 (JKW))

APRIL 16, 2020

GINOZA, CHIEF JUDGE, FUJISE and LEONARD, JJ.

OPINION OF THE COURT BY GINOZA, CHIEF JUDGE

This appeal arises from a Petition for Surcharge
(**Petition**), case number T.No. 13-1-0004, filed by Petitioner-
Appellant Neil Yoneji (**Petitioner Trustee Neil**), as Successor
Trustee of the Mitsuo Yoneji Revocable Trust dated November 27,
1985 (**Mitsuo Trust**), seeking a surcharge against Mary Yoneji
(**Mary**), a beneficiary of the Mitsuo Trust.  Petitioner Trustee
Neil appeals from a Judgment in favor of Mary entered by the
Circuit Court of the Fifth Circuit (**Circuit Court**).[1]

---

[1]  The Honorable Kathleen N.A. Watanabe presided.

The Petition alleges, *inter alia*, that due to Mary's refusal to release information about trust properties, her conversion of trust assets, and her refusal to return the assets, the Mitsuo Trust was forced to initiate, and successfully litigated, two prior civil lawsuits against her during which the Mitsuo Trust incurred significant attorneys' fees and costs. The Petition also contends Mary filed a counterclaim in one of those lawsuits that the Mitsuo Trust successfully defended against. The Petition thus seeks to surcharge Mary, as a beneficiary of the Mitsuo Trust, the attorneys' fees and costs incurred by the Mitsuo Trust in litigating to recover losses caused by Mary and the interest on assets that Mary removed from the Mitsuo Trust.[2]

In denying the Petition, the Circuit Court ruled that: the Petition was barred by the doctrine of *res judicata*; Petitioner Trustee Neil failed to timely request attorneys' fees in one of the prior lawsuits under Hawaii Rules of Civil Procedure (**HRCP**) Rule 54(d)(2); Petitioner Trustee Neil had waived the claims in the Petition; and laches applied. The Circuit Court also held that, pursuant to Hawaii Revised Statutes (**HRS**) § 607-14.5 (2016), the claims in the Petition were frivolous and thus awarded attorneys' fees and costs totaling $19,377.66 in favor of Mary and against Petitioner Trustee Neil.

On appeal, Petitioner Trustee Neil asserts two points of error: (1) the Circuit Court erred in denying the Petition against Mary because he was authorized and obligated to recoup the trust losses, Mary is subject to surcharge for her breach of trust as a co-beneficiary, and the surcharge claim is not barred by *res judicata* or any other form of waiver, laches, or untimeliness; and (2) the Circuit Court abused its discretion in

---

[2] The Petition's prayer for relief also seeks recovery for amounts Mary allegedly withdrew from the Mitsuo Trust bank account and rental profits that she is alleged to have misdirected away from the Mitsuo Trust. Mary contends these issues are among the claims in one of the prior lawsuits. On appeal, Petitioner Trustee Neil focuses the Petition on recovering only attorney's fees and costs incurred in the prior litigation and lost interest.

awarding Mary attorneys' fees and costs because the claims in the Petition were not frivolous.

We hold that the claims in the Petition are not barred due to *res judicata*, waiver, laches or untimeliness. Further, we recognize that pursuant to the Restatement (Third) of Trusts § 104 (Am. Law Inst. 2012), Petitioner Trustee Neil had a legal basis to bring the Petition against Mary, as a co-beneficiary of the Mitsuo Trust, to the limited extent that he alleged Mary participated in a breach of trust regarding the Mitsuo Trust. Thus, the Circuit Court erred in ruling that the Petition's claims were frivolous and in awarding attorneys' fees and costs to Mary.

We vacate the Circuit Court's rulings on the Petition and remand this case for further proceedings.

## I.  Background

The Grantor for the Mitsuo Trust was Mitsuo Yoneji (**Mitsuo**), and the primary assets of the Mitsuo Trust were two commercial properties (**Commercial Properties**) on the island of Kaua'i.  The Mitsuo Trust provided for distributions to Mitsuo's sons, Owen Yoneji (**Owen**) and Neil Yoneji (**Neil**), and to the children of Owen and Neil.  Owen and his wife Charlene Yoneji (**Charlene**) had one daughter, Mary.  Neil and his wife Claire Yoneji (**Claire**) had two sons, Brandon Yoneji (**Brandon**) and Rylan Yoneji (**Rylan**).[3]

The Circuit Court found, and it is undisputed by the parties, that the Commercial Properties are co-owned by four family trusts: the Mitsuo Trust (15%); the Yoneji Revocable Family Trust dated August 21, 1998 (**Yoneji Family Trust**)(42.5%), for which Neil and Claire are trustees; the Revocable Trust of

---

[3]  The family tree for the Yoneji family is as follows:

```
                        Mitsuo Yoneji
                             |
     Charlene Yoneji - Owen Yoneji ------ Neil Yoneji - Claire Yoneji
                   |                                 |
              Mary Yoneji              Brandon Yoneji and Rylan Yoneji
```

Owen Kazuo Yoneji dated January 11, 1994 (**Owen Trust**)(21.25%); and the Revocable Trust of Charlene Tsuruko Yoneji dated January 11, 1994 (**Charlene Trust**)(21.25%).

To put the Petition in context, we first discuss the two prior lawsuits in which the Petition alleges the Mitsuo Trust incurred attorneys' fees and costs due to Mary's conduct.

### A. First Lawsuit – Partition Action

On November 21, 2008, Neil, as Successor Trustee of the Mitsuo Trust, and Neil and Claire, as trustees of the Yoneji Family Trust, filed a "Complaint for Partition of Real Properties" (**Complaint for Partition**) in Civil No. 08-1-0225 against Mary, as trustee of the Owen Trust and Charlene Trust. The Complaint for Partition, filed in the Circuit Court of the Fifth Circuit, alleged that neither the Owen Trust nor the Charlene Trust had replied to requests from the Mitsuo Trust and the Yoneji Family Trust for information regarding management of the Commercial Properties, thereby asserting there was a "failure on the part of the co-tenants to properly own and manage the properties."

On February 24, 2009, the Circuit Court entered its "Findings of Fact, Conclusions of Law, and Order Granting Plaintiffs' Motion for Summary Judgment as to All Defendants Filed on January 8, 2009" (**Partition FOFs/COLs/Order**). In its FOFs and COLs, the Circuit Court, *inter alia*, (1) found that the parties could not agree on the co-ownership and management of the Commercial Properties, (2) designated the respective ownership interests of the four family trusts, (3) concluded that Neil was properly appointed as Successor Co-Trustee of the Mitsuo Trust, and (4) concluded that if the Commercial Properties were incapable of being partitioned in kind, a partition by sale may be the appropriate remedy. The attached Order (1) concluded that Neil, as Successor Trustee of the Mitsuo Trust, and Neil and Claire, as trustees of the Yoneji Family Trust, were entitled to summary judgment as to all named Defendants, (2) set forth instructions for a partition sale, including permission for the parties to purchase the Commercial Properties, and (3) retained

4

jurisdiction to determine the parties' post-sale claims and entitlements, and to hold a hearing to consider confirmation of sale of the Commercial Properties, as needed.

On January 4, 2011, the Circuit Court entered an order granting a Motion for Confirmation of Sale, confirming the sale of the Commercial Properties to the Yoneji Family Trust as the highest bidder at public auction. No appeal was filed.

**B. Second Lawsuit – Conversion and Unjust Enrichment**

On October 26, 2009, Neil, as Successor Trustee of the Mitsuo Trust, and Neil and Claire, as trustees of the Yoneji Family Trust, filed a Complaint in Civil No. 09-1-0282 against Mary and Charlene, in their individual capacities, asserting various tort and equitable claims including, *inter alia*, conversion of trust assets from the Mitsuo Trust and unjust enrichment through retention of said assets.[4] The Complaint, filed in the Circuit Court of the Fifth Circuit, additionally requested that "the Court order that defendants pay Plaintiffs' costs and attorneys' fees[.]"

On February 22, 2013, Charlene filed a Motion for Summary Judgment in response to the Complaint.

On March 20, 2013, Mary filed a Counterclaim against Neil and Claire, in their respective trustee capacities, alleging that they were unjustly enriched by benefitting from using Mary's personal money to have expenses paid related to the Commercial Properties.

In pretrial hearings, the Circuit Court granted Charlene's Motion for Summary Judgment, ruling that Charlene was not liable for any counts alleged in the Complaint. The Circuit Court also granted summary judgment in favor of Mary on the constructive fraud, conspiracy, prima facie tort, and constructive trust claims asserted against her. The Circuit Court also awarded Mary attorneys' fees and costs for claims

---

[4] We refer to this lawsuit as the "Second Lawsuit". In this section, except as noted, references to "Neil and Claire" refer to their capacities in the Second Lawsuit, *i.e.* Neil, as Successor Trustee of the Mitsuo Trust, and Neil and Claire, as trustees of the Yoneji Family Trust.

brought against her by Neil and Claire in their individual capacities.[5]

A jury trial was held regarding the remaining claims of conversion and unjust enrichment against Mary in the Complaint and the claims asserted in Mary's Counterclaim.

On May 1, 2013, in a Special Verdict Form, the jury found that: (1) Mary was liable for conversion and unjust enrichment in the total amount of $129,645.59; (2) Mary had not proven her counterclaim for unjust enrichment against Neil or Claire in their respective trustee capacities; and (3) nothing should be awarded to Mary in restitution for personal monies spent on legitimate business expenses for the Commercial Properties.

On January 27, 2014, the Circuit Court entered an Amended Judgment with regard to Charlene. On February 25, 2014, Neil and Claire in their respective trustee capacities filed a timely notice of appeal from the Circuit Court's Amended Judgment regarding Charlene.

On March 7, 2014, the Circuit Court entered an Amended Final Judgment with regard to the verdict against Mary. The Amended Final Judgment ordered that the converted funds from the Mitsuo Trust and the net rental income related to the Commercial Properties be apportioned between the four family trusts in accordance with their respective ownership interests in the Commercial Properties. The Amended Final Judgment also awarded costs in favor of Neil and Claire in their respective trustee capacities and against Mary in the amount of $32,256.94, and "dispose[d] of all claims remaining in this action."

On April 7, 2014, Neil and Claire in their respective trustee capacities filed a notice of appeal from the Circuit Court's Amended Final Judgment regarding Mary.

---

[5] The written orders granting summary judgment were entered on May 1, 2013, the same date as the jury verdict on the remaining claims.

6

## C. Current Probate Action - Petition for Surcharge

On July 10, 2014, Petitioner Trustee Neil, in his capacity as Successor Trustee for the Mitsuo Trust, filed the Petition in this probate action, T.No. 13-1-0004. The Petition alleges that it seeks to surcharge Mary as a co-beneficiary of the Mitsuo Trust for the attorneys' fees, costs and interests incurred by the Mitsuo Trust related to the prior two lawsuits and in defending against Mary's counterclaim in the Second Lawsuit. The Petition relies, in part, on the Restatement (Third) of Trusts § 104. The Petition asserts that: (1) as trustee of the Mitsuo Trust, Petitioner Trustee Neil has a fiduciary duty pursuant to Hawai'i law, common law, and the Mitsuo Trust document to protect trust assets; and (2) Mary, as a co-beneficiary of the Mitsuo Trust, may be surcharged for waste caused to a trust, *i.e.*, litigation expenses arising from the First and Second Lawsuits. As an additional basis for surcharge, the Petition alleges that co-beneficiary Mary instituted "volunteer, wasteful litigation" via her Counterclaim that was rejected by the jury in the Second Lawsuit, and thus Petitioner Trustee Neil is entitled to attorneys' fees and costs incurred in defending against said Counterclaim.

We note that the Petition's prayer for relief requests recovery beyond attorneys' fees, costs and interest.[6] However, on appeal, Petitioner Trustee Neil's appellate briefs limit his claim to the attorneys' fees and costs incurred in prior

---

[6] The Petition's prayer for relief requests in relevant part:

> B. That [co-beneficiary Mary] be surcharged in the amount equal to the waste and lost income suffered by the Trust as a result of the acts and omissions of [co-beneficiary Mary] described herein, including but not limited to the amounts [Mary] withdrawal [sic] from the Trust bank account, as well as the profits from the rents she mis-directed away from the Trust, as well as the attorneys [sic] fees and cost incurred by [Neil] as Trustee to recover said funds from the trust, including the fees for this Petition.
> C. That the costs, expenses, and attorney's fees of this Petition be taxed against [Mary] personally; and
> D. That [Petitioner Trustee Neil] has such other and further relief as may be just and proper.

7

litigation with Mary, and interest lost by the Mitsuo Trust due to Mary improperly taking trust assets.

On July 10, 2014, Neil and Claire's sons and co-beneficiaries of the Mitsuo Trust, Brandon Yoneji and Rylan Yoneji, joined in the Petition.

On August 4, 2014, co-beneficiary Mary filed an Objection to the Petition, arguing, inter alia, that the Petition relitigates the same claims from the Second Lawsuit, and is barred by claim preclusion, waiver, untimeliness, and lack of statute or precedent authorizing the requests in the Petition. Co-beneficiary Mary's Objection also argued that she was entitled to attorneys' fees and costs because the Petition was frivolous.

On September 17, 2014, the Circuit Court held a hearing on the Petition. At the hearing, Petitioner Trustee Neil's counsel argued that attorneys' fees was "not something that was actually litigated or could have been litigated" because no such remedy existed related to the tort claims in the Second Lawsuit. At the close of the hearing, the Circuit Court orally denied the Petition.

On January 20, 2015, the Circuit Court entered its "Findings of Fact, Conclusions of Law, and Order Denying [Petitioner Trustee Neil's] Petition For Surcharge" (**Order Denying Petition**), based on, inter alia, claim preclusion (res judicata), untimeliness, waiver, laches, and lack of a statute, rule, or precedent authorizing the Petition's claims for attorneys' fees. The Circuit Court additionally found that "Petitioner's claim for attorneys' fees in the Petition should have been brought or could have been brought in the [Second Lawsuit], and that the Petition is barred by claim preclusion (res judicata)[,]" and that "there was no agreement or stipulation between [Petitioner Trustee Neil] and [co-beneficiary] Mary for any award of attorneys' fees regarding the claims in the [Second Lawsuit]." The Circuit Court awarded $18,585.93 in attorneys' fees and $791.73 in costs to co-

beneficiary Mary and against Petitioner Trustee Neil based on HRS § 607-14.5.[7]

On February 3, 2015, the Circuit Court approved a "Stipulation for HRCP Rule 54(b) Certification" stating there was no just reason for delay of entry of final judgment against Petitioner Trustee Neil.

On March 11, 2015, the Circuit Court entered its Judgment, and this appeal followed.

### D. Appellate Decisions and Remand in Second Lawsuit

On July 31, 2015, in Yoneji v. Yoneji, 136 Hawaiʻi 11, 354 P.3d 1160 (App. 2015) (**Yoneji I**), this court vacated the Circuit Court's Amended Judgment in the Second Lawsuit with regard to Charlene and remanded the case for further proceedings. Id. at 21-22, 354 P.3d at 1170-71.[8]

On March 4, 2016, in Yoneji v. Yoneji, 137 Hawaiʻi 299, 370 P.3d 704 (App. 2016) (**Yoneji II**), again related to the Second Lawsuit, this court held that the Circuit Court erred in granting summary judgment in favor of Mary on constructive fraud, conspiracy and constructive trust claims asserted against her. Further, we held that the Circuit Court erred in departing from a court-approved stipulation by precluding Neil, Claire and the Mitsuo Trust from admitting a Special Master's report at trial. We vacated the Circuit Court's grant of summary judgment in favor of Mary on the specified counts, and the award of attorneys' fees and costs to Mary. Id. at 311-14, 323, 370 P.3d at 716-19, 728. Importantly, we also vacated the March 7, 2014 "Amended Final Judgment" entered against Mary, and remanded the case to the Circuit Court for further proceedings. Id. at 323, 370 P.3d at 728.

---

[7] Although Neil's children joined in the Petition, the Circuit Court's Order specifically awarded attorneys' fees and costs to co-beneficiary Mary "and against Petitioner[.]" (Emphasis added).

[8] Specifically, this court concluded that the Circuit Court (1) erred in granting summary judgment in Charlene's favor as to the unjust enrichment, constructive fraud, conspiracy, and constructive trust claims asserted against her, and (2) abused its discretion in granting Charlene's request for attorneys' fees and costs, in light of the error in granting summary judgment for her. Id. at 17-19, 21, 354 P.3d at 1166-68, 1170.

Subsequently, on remand after Yoneji I and Yoneji II, the Circuit Court held further proceedings, and on July 25, 2017, entered a "Final Judgment" (**7/25/17 Judgment**). On August 22, 2017, Neil, as trustee of the Mitsuo Trust, and Neil and Claire, individually and as trustees of the Yoneji Family Trust, filed a timely notice of appeal from the 7/25/17 Judgment. That appeal, designated as CAAP-17-0000619, is pending in this court.

## II. Standard of Review

### A. Questions of Law

"Questions of law are reviewable *de novo* under the right/wrong standard of review." Ditto v. McCurdy, 90 Hawai'i 345, 351, 978 P.2d 783, 789 (1999) (internal quotation marks omitted) (quoting Best Place, Inc. v. Penn America Ins. Co., 82 Hawai'i 120, 123, 920 P.2d 334, 337 (1996)). Under the *de novo* or right/wrong standard, this court "examine[s] the facts and answer[s] the question without being required to give any weight to the trial court's answer to it." Pelosi v. Wailea Ranch Estates, 91 Hawai'i 478, 487, 985 P.2d 1045, 1054 (1999) (internal quotation marks and citations omitted).

### B. Res Judicata

"Application of res judicata is a question of law. Questions of law are reviewed de novo under the right/wrong standard." E. Sav. Bank, FSB v. Esteban, 129 Hawai'i 154, 157, 296 P.3d 1062, 1065 (2013) (citations omitted).

### C. Mixed Question of Law and Fact

> A COL is not binding upon an appellate court and is freely reviewable for its correctness. [The appellate] court ordinarily reviews COLs under the right/wrong standard. Thus, a COL that is supported by the trial court's FOFs and that reflects an application of the correct rule of law will not be overturned. However, a COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case.

Chun v. Bd. of Trs. of Emps.' Ret. Sys. of State of Hawai'i, 106 Hawai'i 416, 430, 106 P.3d 339, 353 (2005) (internal quotation marks, citations, and brackets in original omitted) (quoting Allstate Ins. Co. v. Ponce, 105 Hawai'i 445, 453, 99 P.3d 96, 104 (2004)).

### D. Waiver

A waiver may be expressed or implied, and it may be established by express statement or agreement, or by acts and conduct from which an intention to waive may be reasonably inferred.

Generally, waiver is defined as an intentional relinquishment of a known right, a voluntary relinquishment of rights, and the relinquishment or refusal to use a right. To constitute a waiver, there must have existed a right claimed to have been waived and the waiving party must have had knowledge, actual or constructive, of the existence of such a right at the time of the purported waiver.

Coon v. City & Cty. of Honolulu, 98 Hawaiʻi 233, 261, 47 P.3d 348, 376 (2002) (citations, internal quotation marks and brackets omitted). The existence of a waiver is generally a question of fact, unless the facts are undisputed:

While the question whether a valid waiver exists is generally a question of fact, "when the facts are undisputed it may become a question of law." Hawaiian Homes Comm'n v. Bush, 43 Haw. 281, 286 (1959) (citations omitted); see also Stewart v. Spalding, 23 Haw. 502, 517 (1916) ("The question of waiver is usually a mixed one of law and fact . . ., but where the facts are undisputed and are susceptible of but one reasonable inference it becomes one of law for the court.").

Id. at 261-62, 47 P.3d at 376-77.

### III. Discussion

### A. The Petition Is Not Barred

### 1. *Res Judicata*

Mary claims that Petitioner Trustee Neil's Petition is barred by *res judicata* because, *inter alia*, the claims raised in the Petition are identical to those raised in the Second Lawsuit.

Claim preclusion prohibits a party from relitigating a previously adjudicated cause of action. Moreover, the judgment of a court of competent jurisdiction is a bar to a new action in any court between the same parties or their privies concerning the same subject matter, and precludes the relitigation, not only of the issues which were actually litigated in the first action, but also of all grounds of claim and defense which might have been properly litigated in the first action but were not litigated or decided. The party asserting claim preclusion has the burden of establishing that (1) there was a final judgment on the merits, (2) both parties are the same or in privity with the parties in the original suit, and (3) the claim decided in the original suit is identical with the one presented in the action in question.

Esteban, 129 Hawai‘i at 159, 296 P.3d at 1067 (internal ellipses and emphasis in original omitted) (quoting Bremer v. Weeks, 104 Hawai‘i 43, 54, 85 P.3d 150, 161 (2004)).

Based on our de novo review, we need not reach the question whether the claims in the Petition are identical to those raised in the Second Lawsuit. Rather, we conclude there is no final judgment in the Second Lawsuit for res judicata purposes, and thus the Circuit Court erred in holding that the Petition was barred by res judicata. In the Order Denying Petition, filed on January 20, 2015, the Circuit Court found that there was a final judgment in the Second Lawsuit given the trial court's Amended Final Judgment entered on March 7, 2014. However, on April 7, 2014, Neil and Claire had timely appealed from the March 7, 2014 Amended Final Judgment.

In analyzing res judicata principles, the Hawai‘i Supreme Court has recognized that "[a] judgment is final where the time to appeal has expired without appeal being taken." James W. Glover, Ltd. v. Fong, 42 Haw. 560, 574 (Haw. Terr. 1958) (emphasis added) (citations omitted); see also Esteban, 129 Hawai‘i at 160, 296 P.3d at 1068 (analyzing res judicata in a foreclosure case and stating that "under Hawai‘i law, there was a final judgment on the merits when the time to appeal the Foreclosure Judgment expired." (citation omitted)). Further, in Littleton v. State, 6 Haw. App. 70, 708 P.2d 829 (1985), this court examined the definition of "final judgment" in various contexts and stated:

> The expression "final judgment" is used in different contexts in the law, but in every instance imports a meaning of conclusiveness. . . . It is also significant in the application of the legal doctrine of res judicata. In that context, the supreme court, in Glover v. Fong, 42 Haw. 560 (1958), held that "[a] judgment is final where the time to appeal has expired without appeal being taken." Id. at 574. It follows from Glover that where an appeal has been taken, a judgment of the trial court is not final, at least for purposes of res judicata.

Id. at 75, 708 P.2d at 833 (emphasis added).

We further note that the appeal from the March 7, 2014 Amended Final Judgment in the Second Lawsuit resulted in our

court's opinion in <u>Yoneji II</u>, which vacated the March 7, 2014 Amended Final Judgment and remanded that case to the Circuit Court. On remand in the Second Lawsuit, the Circuit Court entered another judgment, the 7/25/17 Judgment. However, that judgment was also timely appealed and thus is not final for *res judicata* purposes.

We hold that the Circuit Court erred in denying the Petition based on *res judicata* grounds.

## 2. Timeliness

Mary claims that Neil's Petition was properly denied because Neil failed, within fourteen days after the Judgment in the Second Lawsuit, to file a HRCP Rule 54(d)(2) motion requesting attorneys' fees.

HRCP Rule 54(d)(2) provides:

**(d) Costs; Attorneys' Fees.**

. . . .

(2) *Attorneys' Fees.*

> (A) Claims for attorneys' fees and related nontaxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial.

> (B) Unless otherwise provided by statute or order of the court, the motion <u>must be filed and served no later than 14 days after entry of an appealable order or judgment</u>; <u>must specify</u> the judgment and <u>the statute, rule, or other grounds entitling the moving party to the award</u>; and must state the amount or provide a fair estimate of the amount sought. If directed by the court, the motion shall also disclose the terms of any agreement with respect to fees to be paid for the services for which claim is made.

> (C) The provisions of subparagraphs (A) and (B) do not apply to claims for fees and expenses as sanctions for violations of rules.

(Emphases added). <u>See also LeMay v. Leander</u>, 92 Hawai'i 614, 626, 994 P.2d 546, 558 (2000) ("[A]n award of attorney's fees must be based upon either statute, agreement, stipulation or precedent[.]" (citation omitted)).

The requirements of HRCP Rule 54(d)(2) are not applicable here because the Petition is not a post-judgment motion in the Second Lawsuit. Rather, the Petition initiates an

13

entirely separate proceeding in probate court. Thus, the timing requirements in HRCP Rule 54(d)(2)(B) do not apply.

Thus, the Circuit Court erred in denying Neil's Petition based on untimeliness.

### 3. Waiver

Mary claims that the Circuit Court properly denied Neil's Petition based on waiver, because Neil waived his claims in the Second Lawsuit. Mary argues that Neil knew he had incurred attorneys' fees, and his "failure to . . . file any motion for attorney's fees in the [Second Lawsuit] shows his intention to waive any claim for attorney's fees."

"To constitute a waiver, there <u>must have existed a right</u> claimed to have been waived and the waiving party must have had knowledge, actual or constructive, of the existence of such a right at the time of the purported waiver." <u>Coon</u>, 98 Hawai'i at 261, 47 P.3d at 376 (emphasis added).

Given the tort and equitable claims asserted in the Second Lawsuit, there were no grounds upon which to grant attorneys' fees to Neil in that lawsuit. The Hawai'i Supreme Court has recognized that "[g]enerally, under the American Rule, each party is responsible for paying for his or her own litigation expenses[,]" with the exception that "attorneys' fees may be awarded to the prevailing party where such an award is provided for by statute, stipulation, or agreement." <u>TSA Intern. Ltd. v. Shimizu Corp.</u>, 92 Hawai'i 243, 263, 990 P.2d 713, 733 (1999) (internal citations and quotation marks omitted).

In <u>TSA</u>, the supreme court held that the plaintiff's claims sounded in tort, and thus an award of attorneys' fees under HRS § 607-14 (Supp. 1998) was not proper. <u>Id.</u> at 264, 990 P.2d at 734. Similarly, in <u>Leslie v. Estate of Tavares</u>, 93 Hawai'i 1, 7, 994 P.2d 1047, 1053 (2000), the supreme court noted that "an equitable claim for relief is not in the nature of assumpsit" and does not fall within HRS § 607-14 for purposes of awarding attorneys' fees. (Citations omitted). Additionally, the parties do not dispute the Circuit Court's finding that no agreement or stipulation exists between Neil and Mary for any

award of attorneys' fees regarding the claims in the Second Lawsuit. Consequently there was no "right" for Neil to waive in this regard.

The Circuit Court therefore erred in ruling that Neil's Petition is barred by waiver.

### 4. Laches

The Hawai'i Supreme Court has explained that:

> The doctrine of laches reflects the equitable maxim that "equity aids the vigilant, not those who slumber on their rights." Where applicable, it acts to bar a court from considering an equitable action . . . because of a perception that it is more equitable to defendants and important to society to promote claimant diligence, discourage delay and prevent the enforcement of stale claims.
>
> There are two components to laches, both of which must exist before the doctrine will apply. First, there must have been a delay by the plaintiff in bringing his claim, and that delay must have been unreasonable under the circumstances. Delay is reasonable if the claim was brought without undue delay after plaintiff knew of the wrong or knew of facts and circumstances sufficient to impute such knowledge to him. Second, that delay must have resulted in prejudice to defendant. Common but by no means exclusive examples of such prejudice are loss of evidence with which to contest plaintiff's claims, including the fading memories or deaths or material witnesses, changes in the value of the subject matter, changes in defendant's position, and intervening rights of third parties.

Ass'n of Apartment Owners of Royal Aloha v. Certified Mgmt., Inc., 139 Hawai'i 229, 234, 386 P.3d 866, 871 (2016) (citation omitted). Furthermore, laches is "a defense to legal and equitable claims alike." Id. at 236, 386 P.3d at 873.

To the extent the Petition seeks recovery of attorneys' fees and costs incurred by the Mitsuo Trust from litigating the First Lawsuit and the Second Lawsuit, it is reasonable that the Petition would not be filed until those lawsuits are concluded. Here, the Petition was filed four months after the Amended Final Judgment was filed in the Second Lawsuit. We do not view this as an unreasonable delay. Further, even assuming arguendo that the timing of Neil's Petition was unreasonable, the record does not appear to indicate that Mary suffered any prejudice. See Schefke v. Reliable Collection Agency, Ltd., 96 Hawai'i 408, 423, 32 P.3d 52, 67 (2001) (holding that "[a]ssuming arguendo a delay took

place, nothing in the facts indicates that Defendants were prejudiced because Plaintiff did not bring a suit against them earlier, and thus, Defendants were not entitled to an instruction on laches.").

Therefore, the Circuit Court erred in ruling that Neil's Petition was barred by laches.

## B.   The Petition Was Not Frivolous

Neil claims the Circuit Court abused its discretion in awarding Mary attorneys' fees and costs under HRS § 607-14.5 because: (1) his claims were not frivolous; and (2) the attorneys' fees awarded were not shown to have been necessarily and reasonably incurred.

In its Order Denying Petition, the Circuit Court made findings and conclusions that, pursuant to HRS § 607-14.5, the Petition and its claims were "frivolous and not reasonably supported by the facts and the law."   The Circuit Court thus awarded Mary $18,585.93 in attorneys' fees and $791.73 in costs against Petitioner Trustee Neil.

HRS § 607-14.5 provides in relevant part:

(a) In any civil action in this State where a party seeks money damages or injunctive relief, or both, against another party, and the case is subsequently decided, the court may, as it deems just, assess against either party, whether or not the party was a prevailing party, and enter as part of its order, for which execution may issue, a reasonable sum for attorneys' fees and costs, in an amount to be determined by the court upon a specific finding that all or a portion of the party's claim or defense was frivolous as provided in subsection (b).

(b) In determining the award of attorneys' fees and costs and the amounts to be awarded, the court must find in writing that all or a portion of the claims or defenses made by the party are frivolous and are not reasonably supported by the facts and the law in the civil action. In determining whether claims or defenses are frivolous, the court may consider whether the party alleging that the claims or defenses are frivolous had submitted to the party asserting the claims or defenses a request for their withdrawal as provided in subsection (c). If the court determines that only a portion of the claims or defenses made by the party are frivolous, the court shall determine a reasonable sum for attorneys' fees and costs in relation to the frivolous claims or defenses.

(Emphases added).   In addressing an award of attorneys' fees under HRS § 607-14.5, the Hawaiʻi Supreme Court stated that "[a] frivolous claim has been defined as 'a claim so manifestly and

16

palpably without merit, so as to indicate bad faith on the pleader's part such that argument to the court was not required.'" Canalez v. Bob's Appliance Serv. Ctr., Inc., 89 Hawai‘i 292, 300, 972 P.2d 295, 303 (1999) (quoting Coll v. McCarthy, 72 Haw. 20, 29, 804 P.2d 881, 887 (1991)).

Petitioner Trustee Neil contends that, as a trustee of the Mitsuo Trust, he had a fiduciary duty to preserve the trust assets, to recover funds removed and misdirected by Mary, and to employ legal counsel and other professionals to litigate and secure assets wrongfully held by Mary. He also contends that the Petition's claim for a surcharge against Mary was proper citing, *inter alia*, § 104 of the Restatement (Third) of Trusts and In re Campbell's Estate, 46 Haw. 475, 382 P.2d 920 (1963). We note that the Petition contained citations to these authorities, among others.

Mary contends the Petition was improper because there is no statute, rule or precedent authorizing the Petition's claim for attorneys' fees, costs, or interest. Mary also contends that "Hawaii has not adopted the Restatement (Third) of Trusts."

The Restatement (Third) of Trusts § 104 provides:

**§ 104 Liability of Beneficiary to Trust**
(1) A beneficiary is not personally liable to the trust except to the extent:
(a) of a loan or advance to the beneficiary from the trust;
(b) of the beneficiary's debt to the settlor that has been placed in the trust, unless the settlor manifested a contrary intention;
(c) the trust suffered a loss resulting from a breach of trust in which the beneficiary participated; or
(d) provided by other law, such as the law of contract, tort, or unjust enrichment.
(2) If a beneficiary is personally liable to the trust, the trust is entitled to a charge against the beneficiary's interest in the trust to secure the payment of the liability.

(Emphases added).

Comment f to § 104 further provides:

f. *Loss resulting from breach of trust in which beneficiary participated (Clause (c))*. A beneficiary owes a duty to the other beneficiaries not to participate in a breach of trust. If a beneficiary participates in a breach of trust, causing a loss to the trust (see the definition of "loss" in § 100,

17

Comment b) [⁹], the beneficiary is personally liable to the trust for all or part of the loss, as appropriate[.]

Certainly, the beneficiary participates in a breach of trust if the beneficiary performs, or joins in performing, an act the beneficiary knows is a breach. Otherwise, the question of what conduct of the beneficiary constitutes participation in a breach of trust is a question of degree. For example, a beneficiary has participated in a breach of trust if the beneficiary induced the misconduct knowing that it would or might be a breach of trust. However, mere knowledge of, or consent to, the breach, without more, is insufficient to constitute participation (though the beneficiary may be liable under the law of unjust enrichment for any resulting benefit received[.]

Petitions for surcharge initiated by beneficiaries against trustees for breach of trust are an established practice in Hawai'i. See HRS § 560:7-306(b) and (d) (2006);[10] Matter of

---

⁹ § 100 of the Restatement (Third) of Trusts addresses liability of a trustee for breach of trust. Comment b provides, in relevant part:

> b(2). Attorney fees and other costs. The "make whole" objective (see Comment a) of recovery from a trustee under Clause (a) may include, in an appropriate case, the attorney fees and other litigation costs of a successful plaintiff—that is, a co-trustee or successor trustee, or a beneficiary who qualifies for reimbursement from the trust under § 88, Comment d. This element of recovery, however, is a matter of judicial discretion and not a routine part of trustee liability for breach of trust (see id.). Among the facts and circumstances courts consider in exercising their judgment in these matters are the nature and extent of trustee misconduct in committing the breach, the conduct of the trustee in presenting the accounting or defending the surcharge action, and the significance of imposing costs on the trustee as a deterrent to misconduct.
>
> A trustee's payment of a beneficiary's costs is especially significant and appropriate with regard to violations of fiduciary duty that are unlikely to cause losses of the types considered in Comment b(1), such as a trustee's improper refusal to provide information requested by a beneficiary (see § 82(1)). (For other remedial actions that might serve a similar purpose in breach-of-trust cases of this type, see § 91, Comment c.)

Restatement (Third) of Trusts § 100 cmt. b(2) (emphasis added).

¹⁰ At the time of Mary's alleged misconduct in 2008, HRS § 560:7-306(b) & (d) provided, in relevant part:

> §560:7-306 Personal liability of trustee to third parties.
>
> . . . .
>
> (b) A trustee is personally liable for obligations arising from ownership or control of property of the trust estate and for torts committed in the course of administration of
>
> (continued...)

Estate of Dwight, 67 Haw. 139, 146, 681 P.2d 563, 569 (1984); Dowsett v. Hawaiian Tr. Co., 47 Haw. 577, 578, 393 P.2d 89, 91 (1964); Steiner v. Hawaiian Tr. Co., 47 Haw. 548, 575, 393 P.2d 96, 111 (1964). However, Hawai'i courts have not previously addressed whether a beneficiary can be held liable as set forth in § 104 of the Restatement (Third) of Trusts.

We first note that Mary's contention, that Hawai'i has not adopted the Restatement (Third) of Trusts, is not altogether correct. Hawai'i appellate courts have looked to the Restatement (Third) of Trusts for guidance in other areas of trust law in numerous cases.[11] Additionally, we note that at least three other jurisdictions have applied or positively cited to § 104(1)(c) of the Restatement (Third) of Trusts.[12] We have not found any cases rejecting § 104(1)(c).

Furthermore, permitting a trustee to surcharge a beneficiary who participates in a breach of trust is consistent with the traditional duty of loyalty a trustee owes to the trust's beneficiaries, i.e., "to administer the trust solely in

---

(...continued)
    the trust estate.

    . . . .

        (d)  The question of liability as between the trust estate
        and the trustee personally may be determined in a proceeding
        for accounting, surcharge or indemnification or other
        appropriate proceeding.

    [11] See Tr. Created Under the Will of Damon, 140 Hawai'i 56, 68, 398 P.3d 645, 657 (2017); Nordic PCL Const., Inc. v. LPIHGC, LLC, 136 Hawai'i 29, 49 n.22, 358 P.3d 1, 21 n.22 (2015); Lahaina Fashions, Inc. v. Bank of Hawai'i, 131 Hawai'i 437, 439, 453-56, 319 P.3d 356, 358, 372-75 (2014); Kealoha v. Machado, 131 Hawai'i 62, 77-78, 315 P.3d 213, 228-29 (2013); Awakuni v. Awana, 115 Hawai'i 126, 133-36, 134 n.8, 165 P.3d 1027, 1034-37, 1035 n.8 (2007); In re Ishida-Waiakamilo Legacy Tr., 138 Hawai'i 98, 103-04, 377 P.3d 39, 44-45 (App. 2016); Nepage-Fontes v. Nepage, No. CAAP-12-0000621, 2013 WL 3063780, at *3-4 (Hawai'i App. Jun. 18, 2013) (mem. op.); In re Thomas H. Gentry Revocable Trust, Nos. 29727, 29728, 2013 WL 376083, at *9 (Hawai'i App. Jan. 31, 2013) (mem. op); O'Gorek v. Hawaii Pub. Emps. Health Fund, No. 28248, 2011 WL 5903874, at *15 (Hawai'i App. Nov. 23, 2011) (mem. op.).

    [12] See Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc., 188 F. Supp.3d 1097, 1113-14 (D. N.M. 2016); State Street Bank and Tr. Co. v. Canal Ins. Co., No. 1:14-CV-2080-LMM, 2015 WL 11256569 at *11(N.D. Ga. Sept. 8, 2015); In re Testamentary Trust Created Under Will of King, 434 P.3d 502, 510-11 (Or. Ct. App. 2018).

the interest of the beneficiaries."  See Awakuni, 115 Hawai'i at 133, 165 P.3d at 1034 (referencing § 170(1) of the Restatement (Third) of Trusts, which states that "[t]he trustee is under a duty to administer the trust solely in the interest of the beneficiaries." (internal quotation marks omitted)); see also HRS § 560:7-301 (2018).

In trusts with multiple beneficiaries, like this case, a trustee would be administering the trust in the interest of the other beneficiaries by petitioning for surcharge against a beneficiary who participates in a breach of trust.  Cf. In re Campbell's Estate, 46 Haw. at 524, 382 P.2d at 954 (stating "[w]here a beneficiary brings a suit against his trustee which is groundless, the solicitor's fees and expenses of the trustee in defending the charge are to be paid out of the share of the complainant in the trust estate, and not charged against the estate generally nor a general fund by which co-beneficiaries would have to contribute." (quoting Patterson v. N. Tr. Co., 122 N.E. 55, 56 (Ill. 1919)).  See also Helene S. Shapo et al., The Law of Trusts and Trustees § 191, at 558 (3rd ed. 2012) (stating that co-beneficiaries "are in a fiduciary relation to each other in the sense that one beneficiary may not secretly secure for himself a special advantage in the trust administration." (footnote omitted)).

We thus conclude that adopting § 104(1)(c) and (2) of the Restatement (Third) of Trusts is consistent with existing Hawai'i precedent, and we therefore adopt those provisions.  As set forth under § 104(1)(c) of the Restatement (Third) of Trusts, the liability of a beneficiary is limited to circumstances where "the trust suffered a loss resulting from a breach of trust in which the beneficiary participated[.]" (Emphasis added).  In this regard, HRS Chapter 560, Article VII, Part 3 (Duties and Liabilities of Trustees) contains provisions related to a trustee's duties and standard of care, but does not contain provisions regarding a beneficiary's duties.  Thus, we view the beneficiary's liability under § 104(1)(c) of the Restatement

(Third) of Trusts as limited to circumstances where the beneficiary <u>participates in a breach of trust by a trustee</u>.

Here, the Petition alleges that Mary's father, Owen, became the Successor Trustee of the Mitsuo Trust in 1992, and Petitioner Trustee Neil was appointed a co-Successor Trustee in 1994. The Petition further alleges that the Mitsuo Trust's most significant assets were two commercial real estate properties, and that Owen managed those properties through his company Yoneji Enterprises until April 2008, when Owen's failing health prevented him from continuing in that capacity. The Petition asserts that Mary began removing money from the Mitsuo Trust bank account in April 2008, sent a letter to tenants of the commercial properties to send the monthly rent checks to her, and that through September or October of 2009, Mary deposited rent funds into accounts that she controlled. The Petition further alleges:

> 40. Initially, [Petitioner Trustee Neil] was focused on taking over management of the Trust following Owen's illness in the fall of 2007 followed by his ultimate death in September 2008. [Petitioner Trustee Neil] met with Owen Yoneji several times during this time period including a meeting in April 2008 and they discussed the future management of the real properties in light of Owen's declining health and the resignation of the long-standing bookkeeper, Setsuko Isoda[.]
>
> 41. Following this April 2008 meeting, [Petitioner Trustee Neil] retained counsel to sort through the management of the properties and Trustee responsibilities of the Mitsuo Yoneji Trust. [Petitioner Trustee Neil's] counsel wrote Owen Yoneji to address these issues. . . . Owen Yoneji never responded.

The allegations in the Petition sufficiently indicate that Mary may have participated in a breach of trust by her father, Owen. In 2008, HRS § 560:7-302 (2006) stated in relevant part "[e]xcept as otherwise provided by the terms of the trust, the trustee shall observe the standards in dealing with the trust assets that would be observed by a prudent person dealing with the property of another[.]" Moreover, in 2008, HRS § 560:7-303 (2018) provided and still provides that "[t]he trustee shall keep the beneficiaries of the trust reasonably informed of the trust and its administration[.]" Given the Petition's allegations, it can be construed that Owen was not meeting these statutory obligations as a trustee who had been managing the commercial

21

properties that were the main assets of the Mitsuo Trust. Further, after an April 2008 meeting between Owen and Petitioner Trustee Neil (who was also a beneficiary of the Mitsuo Trust), Petitioner Trustee Neil's counsel sent a letter to Owen about the trust, but Owen "never responded."

We thus conclude that, under § 104(1)(c) and (2) of the Restatement (Third) of Trusts, the Petition sufficiently alleges that Mary may have participated in a breach of trust owed to the Mitsuo Trust by her father, Owen.

Finally, the terms of the Mitsuo Trust provide that the "GRANTOR specifically gives the TRUSTEE, in the administration of the trust estate, all the powers, as may be applicable, given to a personal representative as enumerated in HRS § 560:3-715."[13] and "[t]o employ legal counsel, accountants, investment counselors or other persons related to the administration or preservation of the trust estate." Thus, Petitioner Trustee Neil was authorized to retain attorneys to pursue claims against Mary in the Second Lawsuit seeking the return of trust assets.

Given our conclusion that Petitioner Trustee Neil had a legal basis to assert the Petition under § 104(1)(c) and (2) of the Restatement (Third) of Trusts, to the extent it alleges Mary

---

[13] The Mitsuo Trust is dated November 27, 1985. In 1985, HRS § 560:3-715 provided, in relevant part:

§560:3-715 **Transactions authorized for personal representatives; exceptions.** Except as restricted or otherwise provided by the will or by an order in a formal proceeding and subject to sections 531-28.5 and 531-29, and the priorities stated in section 560:3-902, a personal representative, acting reasonably for the benefit of the interested persons, may properly:

. . . .

(21) Employ persons, including attorneys, auditors, appraisers, investment advisors, or agents, even if they are associated with the personal representative, to advise or assist the personal representative in the performance of the personal representative's administrative duties; act without independent investigation upon their recommendations; and instead of acting personally, employ one or more agents to perform any act of administration, whether or not discretionary[.]

22

participated in a breach of trust regarding the Mitsuo Trust, and that the Petition is not barred by *res judicata*, being untimely, waiver or laches, the Circuit Court erred in finding that Petitioner Trustee Neil's Petition was frivolous.[14]

Therefore, the Circuit Court abused its discretion in granting Mary's request for attorneys' fees and costs under HRS § 607-14.5. We need not address whether the amounts awarded were reasonable.

## IV. Conclusion

Based on the foregoing, we vacate the following entered by the Circuit Court of the Fifth Circuit:

(1) "Judgment" filed March 11, 2015; and

(2) "Findings of Fact, Conclusions of Law, and Order Denying Petitioner Neil Yoneji, Successor Trustee of the Mitsuo Revocable Trust Dated November 27, 1985's Petition for Surcharge (Filed 7/10/14)" filed January 20, 2015.

This case is remanded to the Circuit Court for further proceedings consistent with this opinion.


On the briefs:

Patrick Shea,
(Rebecca A. Copeland
on the briefs)
for Petitioner-Appellant.

Ryan G.S, Au,
for Beneficiary-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Alexa D.M. Fujise
Associate Judge

/s/ Katherine G. Leonard
Associate Judge

---

[14] Furthermore, with regard to Petitioner Trustee Neil's claim based on § 104 of the Restatement (Third) of Trusts, the Supreme Court of Hawaiʻi has held that in areas where the legal principles are not firmly established, a party's actions based on those principles may not be frivolous. Taomae v. Lingle, 110 Hawaiʻi 327, 332, 132 P.3d 1238, 1243 (2006) (citing Baaske v. City of Rolling Meadows, 191 F.Supp.2d 1009, 1018 (N.D. III. 2002) (holding that "a plaintiff's erroneous interpretation in a case of first impression should not, without more, lead the court to conclude that the plaintiff's claims are frivolous, unreasonable, or without foundation." (citation omitted))).